**Edwin GARCIA, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF INFORMATION AND PRIVACY, Defendant.**

No. 00 Civ. 4970(GWG).

United States District Court, S.D. New York.

Jan. 14, 2002.

---

Edwin Garcia, Wallkill, New York, pro se.

Mary Jo White, United States Attorney, Southern District of New York, New York, New York, By: David J. Kennedy, Assistant United States Attorney, for the United States Department of Justice.

## OPINION AND ORDER [1]

GORENSTEIN, United States Magistrate Judge.

*Introduction*

Plaintiff Edwin Garcia seeks declaratory and injunctive relief ordering the United States Department of Justice to produce records responsive to his Freedom of Information Act ("FOIA") request made to the New York Field Office of the Federal Bureau of Investigation ("FBI") on December 6, 1998. The United States Department of Justice (the "Government") has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's complaint on the grounds that (a) the Government has identified all responsive documents that it is required to identify under FOIA and (b) the Government has withheld or redacted only those documents that it is entitled to withhold or redact under exemptions to FOIA's disclosure requirements.

---

**1.** On September 29, 2000, the parties consented to this matter being determined by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

*Garcia's Convictions*

Garcia, a former New York State police officer, was convicted on November 23, 1992, of two counts of robbery in the first degree for the armed robbery of a jewelry store in the Town of Poughkeepsie and was sentenced to serve two concurrent terms of 12–1/2 to 25 years. *See* Sentence and Commitment, *People v. Edwin Garcia, et al.*, Ind. No. 195/91, dated November 24, 1992 (reproduced as Exhibit A to Declaration of David J. Kennedy, dated February 28, 2001 ("Kennedy Decl.")). During the robbery, conducted by Garcia and another individual (Lisa Seymour), Garcia placed a gun to the head of the wife of the jewelry store manager, told her not to look at his face, and struck her in the head with the gun. The robbers used duct tape to cover the woman's eyes and to bind her hands; they also placed a rag in her mouth and made her sit on the floor with her back against the wall while Garcia robbed the store. *See* Bill of Particulars, *People v. Edwin Garcia et al.*, Ind. No. 195/91 (Supreme Court, Dutchess County), dated January 29, 1992 (reproduced as Exhibit C to Kennedy Decl.). Garcia also forced two customers, who arrived at the store toward the end of the robbery, to lie down on the floor at gunpoint while he took their car keys. *Id.*

Shortly after being imprisoned on the robbery conviction, Garcia plotted to murder Lisa Seymour, the co-perpetrator of the robbery, who had testified against Garcia at trial. *See* Indictment, *People v. Edwin Garcia*, Ind. No. 94–36 (County Court, Cayuga County), January Term, 1994 (reproduced as Exhibit F to Kennedy Decl.). Garcia provided written information and a photograph of Ms. Seymour to an undercover officer who was to perform the contract killing. *Id.* On January 26, 1995, Garcia was convicted of conspiracy and sentenced to 7–1/2 to 15 years to run consecutively to his sentence on the armed robbery conviction. *See* Sentence and Commitment, *People v. Garcia*, Ind. No. 94–36 (County Court, Cayuga County Jan. 26, 1995) (reproduced as Exhibit D to Kennedy Decl.).[2]

*Garcia's FOIA Request and the FBI's Response*

By letter dated December 6, 1998, Garcia made a request pursuant to FOIA to the New York Field Office of the FBI. In that letter, Garcia requested any investigative reports pertaining to himself including "copies of any statements made by individuals where no requests of confidentiality was [sic] promised or given. And who were interviewed in reference to the investigation of my person." Declaration of Scott A. Hodes, dated January 23, 2001 ("Hodes Decl."), ¶ 4; Exhibit A.

The FBI responded to Garcia's initial FOIA request by letter dated January 11, 1999, asking Garcia for additional information concerning his request and seeking privacy waivers from individuals about whom he had requested information. Hodes Decl. ¶ 5; Exhibit B. On January 19, 1999, Garcia provided some of the additional information, but informed the FBI that he believed it was not necessary to

---

**2.** Garcia denies his guilt in these cases, stating that he was a victim of a "miscarriage of justice." *See* Plaintiff's Rule 56.1 Statement, dated March 31, 2001, ¶ 4. Garcia, however, is collaterally estopped from further litigating this issue as he was convicted in both cases. *See, e.g., Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir.1986) ("the criminal defendant is barred [by collateral estoppel] from

relitigating any issue determined adversely to him in the criminal proceeding ....") (citations omitted); *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978) ("a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case").

provide privacy waivers. *Id.* ¶ 6; Exhibit C. Ultimately, however, on February 1, 1999, Garcia did provide a privacy waiver executed by Debra Williams, his former girlfriend. *Id.* ¶ 7; Exhibit D. Subsequently, on February 18, 1999, the FBI informed Garcia that there were no records responsive to his request in the Central Records System. *Id.* ¶ 8; Exhibit E. On February 26, 1999, Garcia filed an appeal of this determination with the Department of Justice's Office of Information and Privacy. *Id.* ¶ 14; Exhibit K. Prior to Garcia's February 26 letter, however, the FBI informed Garcia by letter dated February 23, 1999, that a further search had revealed information responsive to his request. *Id.* ¶ 9; Exhibit F. On March 18, 1999, the FBI informed Garcia that due to a large backlog there would be a delay in answering his request. *Id.* ¶ 10; Exhibit G.

On June 22, 1999, the FBI wrote to Garcia and informed him that approximately 900 pages appeared to be responsive to his FOIA request and that Garcia would be responsible for any duplication fees. *Id.* ¶ 11; Exhibit H. Garcia responded by letter dated June 27, 1999, that he would be willing to pay any such duplicating fees. *Id.* ¶ 12; Exhibit I. The FBI acknowledged receipt of this letter and informed Garcia that he would have to wait until requests ahead of his had been processed. *Id.* ¶ 13; Exhibit J.

*The FOIA Action*

On July 7, 2000, Garcia filed the complaint in this action seeking declaratory and injunctive relief ordering the Government to produce records responsive to his request. On October 13, 2000, the FBI released 333 pages of information to Garcia. *Id.* ¶ 16; Exhibit M. 133 additional pages were released to Garcia on November 15, 2000, and another 217 pages were released to Garcia on November 30, 2000.

*Id.* ¶¶ 17, 18; Exhibits N, O. After the FBI released these pages, Garcia provided a privacy waiver for Manuel Alvarez. *Id.* ¶ 19. The FBI reprocessed all of its previous releases to take into account this new waiver. *Id.* n. 1.

Garcia now contests the FBI's decision to withhold certain responsive documents and to redact portions of other responsive documents that were released to him. Correspondence between the parties has narrowed the scope of the documents currently sought by Garcia to 160 redacted pages of documents and 261 pages of withheld documents. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment dated February 28, 2001 at 8 (citing to correspondence); Exhibit K to Kennedy Decl. (copies of the documents in dispute); Memorandum of Law in Opposition of Defendant's Motion for Summary Judgment ("Garcia Mem.") at 1 ("[p]laintiff accepts and adopts defendants [sic] exhibits as an accurate representation of the records being litigated in this matter."); *accord* Exhibit J to Kennedy Decl. (letter from Garcia).

*The Withheld and Redacted FOIA Material*

The 421 pages at issue that were withheld or redacted by the FBI, *see* Exhibit K to Kennedy Decl., were withheld or redacted pursuant to the exemptions to FOIA listed below. *See* Rule 56.1 Statement, dated February 28, 2001 ("Gov't Stat."), ¶ 27 (summarizing redactions).

(1) *Exemption 7(C) of FOIA:* This provision exempts from disclosure information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

(2) *Exemption 7(D) of FOIA:* This provision exempts from disclosure information that "could reasonably be expected to dis-

close the identity of a confidential source."
5 U.S.C. § 552(b)(7)(D).

(3) *Exemption 7(F) of FOIA:* This provision exempts from disclosure information that could "endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

(4) *Exemption 3 of FOIA:* This provision exempts from disclosure any information "specifically exempted from disclosure by another statute." 5 U.S.C. § 552(b)(3). The relevant statute here is Rule 6(e) of the Federal Rules of Criminal Procedure, which bars public disclosure of matters before a grand jury.

All the claimed exemptions are described in the Declaration of Scott A. Hodes, dated January 23, 2001, which serves as an index of the different exemption categories invoked by the Government in this case. The Government has essentially provided a "coded" index (commonly known as a *"Vaughn"* index, *see Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)) by assigning codes to the various asserted statutory exemptions. The codes consist of the particular FOIA exemption's statutory subsection (for example, Exemption 7(C)) broken down into subcategories. Thus "(b)(7)(C)—1" designates the withholding or redaction of names of FBI Special Agents or non-agent employees of the FBI. Hodes Decl. ¶ 38. The designation "(b)(7)(C)—2" designates the names and/or descriptive data of third party individuals who were of investigative interest. *Id.* ¶ 39. For each document that has been withheld, the statutory exemption and relevant sub-category has been noted. *See* Kennedy Decl., Exhibit K. Where there is a redaction within a particular page, the exemption and subcategory is noted next to that particular redaction. *See id.* Sometimes more than one exemption and sub-category is noted

for a particular redaction or withheld document. The Government has also supplied a listing of each document that has been withheld or redacted followed by the particular exemption code or codes that were applied. *See* Gov't Stat. ¶ 27.

*The Motion for Summary Judgment*

On March 2, 2001, the Government filed the instant motion for summary judgment dismissing Garcia's FOIA complaint on the grounds that (a) after making an adequate search, the Government has produced all responsive documents that it is required to produce under FOIA and (b) that the Government has withheld or redacted only those documents that it is entitled to withhold or redact under exemptions to FOIA's disclosure requirements. Included with its motion papers was a Statement Pursuant to Rule 56.1, dated February 28, 2001, and a notice to the *pro se* plaintiff regarding the requirements of Fed.R.Civ.P. 56, as required by Local Civil Rule 56.2. In response, the plaintiff submitted a memorandum in opposition along with a filing denominated "Rule 56.1 Statement." This statement challenged many of the facts underlying the criminal charges for which he was convicted but did not otherwise controvert the allegations of the Government's Rule 56.1 Statement. *See* Plaintiff's Rule 56.1 Statement, dated March 31, 2001 ("Garcia Stat."). Following the initial submission of the Government's reply memorandum, additional briefing from the parties was received in May and June 2001.

*DISCUSSION*

I. *The Legal Standard for Summary Judgment in Actions Brought Pursuant to FOIA*

To prevail on a motion for summary judgment in an action brought pursuant to FOIA, the Government has "the burden of showing that its search was

adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. United States Dep't of Justice,* 19 F.3d 807, 812 (2d Cir.), *cert. denied,* 513 U.S. 823, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *accord Ruotolo v. Dep't of Justice, Tax Div.,* 53 F.3d 4, 9 (2d Cir.1995) (citing *Carney,* 19 F.3d at 812). Summary judgment may be granted on the basis of affidavits or declarations "supplying facts indicating that the [government] agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption." *Carney,* 19 F.3d at 812; *see also Grand Cent. P'ship v. Cuomo,* 166 F.3d 473, 478 (2d Cir.1999) (district court may grant summary judgment to an agency based on affidavits which contain "reasonable specificity of detail" if there is no evidence of bad faith) (citation omitted). Affidavits submitted by an agency are presumed to have been made in good faith. *Carney,* 19 F.3d at 812. If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply. *Id.; Triestman v. United States Dep't of Justice, DEA,* 878 F.Supp. 667, 672 (S.D.N.Y.1995).

II. *The Adequate Search Requirement*

 When the plaintiff in a FOIA case alleges that the agency in question "has improperly withheld documents through its failure to locate them, the agency's burden is to establish that it conducted an adequate search that failed to produce the requested records." *Katzman v. Freeh,* 926 F.Supp. 316, 320 (W.D.N.Y.1996). If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue. *Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984) ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*") (emphasis in original). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search suffice to meet this burden and a district court may award summary judgment based on such declarations and affidavits." *Rabin v. United States Dep't of State,* 980 F.Supp. 116, 120 (E.D.N.Y.1997) (citations omitted). These agency affidavits must show that the agency made a good faith effort to search for the requested documents, using methods "reasonably calculated" to produce documents responsive to the FOIA request. *Weisberg,* 745 F.2d at 1485. Such affidavits are presumed to be made in good faith. *Carney,* 19 F.3d at 812. This presumption of good faith "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C.Cir.1991) (citations and internal quotation marks omitted). Speculation that other documents exist, without more, "does not undermine the finding that the agency conducted a reasonable search." *SafeCard,* 926 F.2d at 1201 (citations omitted); *Carney,* 19 F.3d at 813 (district court properly denied discovery to FOIA plaintiff where plaintiff's allegation that "huge classes" of documents had been withheld by the Department of Justice was "grounded in mere speculation" and there was "a complete lack of tangible proof" that such documents existed).

 In the present case, the FBI has demonstrated that it conducted an adequate search for the documents requested by Garcia. The Government has submit-

ted a Declaration from Scott A. Hodes, who is Acting Chief of Litigation for the Freedom of Information–Privacy Acts Section, which is within the FBI's Office of Public and Congressional Affairs. *See* Hodes Decl. ¶ 1. The Hodes Declaration describes the Central Records System, which is the FBI's method for searching files, in detail; cites to the actual file located as a result of its search, File 194C–NY–231226; describes the subject matter of the file searched; and sets forth the number of documents found, processed and released to plaintiff. *Id.* ¶¶ 20–27. The Hodes Declaration fulfills the requirement that a declaration concerning the adequacy of the government's search must demonstrate that the agency used methods "reasonably calculated" to produce documents responsive to the plaintiff's FOIA request. *Weisberg,* 745 F.2d at 1485. Because this declaration makes a facially adequate showing that the FBI conducted a reasonable search for documents responsive to Garcia's request, the Court presumes it to have been made in good faith. *Carney,* 19 F.3d at 812. Accordingly, Garcia must present some evidence of bad faith on the part of the Government—or non-speculative evidence regarding the existence of documents—in order to defeat the Government's motion for summary judgment as to the search. *Id.; Triestman,* 878 F.Supp. at 672 (S.D.N.Y.1995).

■ Garcia's arguments in support of his claim that the Government failed to perform an adequate search can be summarized as follows: (1) the Government acted in bad faith in conducting its search because the Government initially claimed it had no responsive documents and did not release any documents to Garcia until he had filed "several appeals"; (2) the Government provided Garcia with additional documents from the FBI after it had moved for summary judgment, thereby "undermin[ing] the gov'ts [sic] claims of having conducted a proper search for the documents requested, as they are obviously still searching"; (3) the Hodes declaration is insufficient on its face because it fails to provide adequate details of the search for the requested documents and Hodes himself did not personally conduct the search; (4) the Government "has in its possession records" concerning a state trooper who testified at Garcia's trial, but "ha[s] yet to acknowledge their existence" and (5) additional documents concerning plaintiff's arrest for conspiracy "surely [were] created" due to alleged "close contact" between the "NYS Inspector General's Office" and "the gov't [sic] . . . belittl[ing] the go'vt's [sic] claims that it has released all available documents pertaining to plaintiff." *See* Garcia Mem. at 5–7; Garcia Stat. at ¶¶ 6, 19.

Garcia's argument regarding the Government's initial failure to locate responsive documents is meritless. Garcia has made no showing that the Government's initial inability to locate documents was the result of bad faith as opposed to mere administrative error. *See SafeCard,* 926 F.2d at 1202 (mere "mix-up[s] and . . . technical failings [by the agency] support neither the allegation that [the agency's] search procedures were inadequate, nor an inference that it acted in bad faith"). Only five days after the Government informed Garcia of its initial failure to locate any records that were responsive to his request, the Government informed him by letter dated February 23, 1999, that it had in fact found a number of responsive documents. *See* Hodes Decl. ¶ 9; Exhibit F. Contrary to Garcia's assertion that he was forced to make "several appeals" to obtain these documents, the Government informed Garcia that it had located responsive documents prior to any appeal made by Garcia. *Id.* ¶¶ 9, 14; Exhibits F, K. Moreover, the Government re-processed

Garcia's initial request after he provided the privacy waiver signed by Manuel Alvarez. *Id.* ¶ 19, n. 1. In all, the Government has released at least 700 pages of responsive documents to Garcia pursuant to his December 6, 1998, FOIA request. *Id.* ¶¶ 16–19; Exhibits M, N, O.

■ Garcia's complaint regarding the Government's release of additional documents after it had moved for summary judgment is similarly without merit. These additional documents were released to Garcia pursuant to a different FOIA request made to the FBI's Albany Field Office. *See* Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment dated April 19, 2001, at 2–3 (citing to Government's Response to Garcia's 56.1 Statement, Exhibit A and to Transcript of Telephone Conference Before Hon. Andrew J. Peck, January 3, 2001, at 6–7 (reproduced as Exhibit B to Government's Response to Garcia Stat.)). Accordingly, they are not relevant to this case, which concerns only Garcia's December 6, 1998, request to the New York Field Office.

■ Garcia's arguments concerning the alleged insufficiency of the Government's description of the search are also unavailing. In order to fulfill the adequate search requirement, the Government should "identify the searched files" and "recite facts which enable the District Court to satisfy itself that all appropriate files have been searched." *Church of Scientology v. IRS,* 792 F.2d 146, 151 (D.C.Cir.1986), *aff'd,* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987). However, "a search for responsive documents need not, and indeed could not be perfect." *Lawyers Comm. for Human Rights v. INS,* 721 F.Supp. 552, 566 (S.D.N.Y.1989). A search is reasonable and adequate even if "it fails to produce all relevant material." *Meeropol v. Meese,* 790 F.2d 942, 953

(D.C.Cir.1986). The agency is not expected to take extraordinary measures to find the requested records, but only to conduct a search "reasonably designed to identify and locate responsive documents." *Lawyers Comm.,* 721 F.Supp. at 565; *accord Marrera v. Department of Justice,* 622 F.Supp. 51, 54 (D.D.C.1985) (agency not required to search every division or field office to fulfill the adequate search requirement).

The Hodes Declaration describes in sufficient detail the FBI's document search procedures and the responsive documents located in accordance with these procedures and pursuant to Garcia's FOIA request. The Declaration describes the file systems of the FBI and the FBI's capacity to conduct a search of such files for a particular subject. Hodes Decl. ¶¶ 20–24. It states that one file, denominated 194C–NY–231226, contained documents relating to Garcia, even though Garcia was not the main subject of the file. *Id.* ¶¶ 25–26. Hodes is the Acting Chief of the Litigation Unit which processes FOIA requests, *id.* ¶¶ 1–2, and therefore the appropriate individual to describe the search for responsive documents in this case. *Carney,* 19 F.3d at 814 ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed ... there is no need for the agency to supply affidavits from each individual who participated in the actual search."). Thus, the Hodes Declaration is facially sufficient for purposes of the "adequate search" requirement.

■ Finally, Garcia's unsupported claims regarding the alleged existence of specific classes of documents—namely, those related to a witness at his robbery trial and documents concerning Garcia's conspiracy arrest and conviction—do not overcome the presumption that the Government has made a good faith search for

documents responsive to his request. Garcia alleges that records were "surely created" by the FBI regarding his conspiracy charge and conviction, Garcia Stat. ¶ 18, and also states in conclusory fashion that the FBI has information concerning a witness at his robbery trial, but that the Government "ha[s] yet to acknowledge [its] existence." Garcia Stat. ¶ 6. However, he has produced no tangible evidence that such documents actually exist and are being withheld in bad faith. Because Garcia's allegations regarding the presumed existence of other documents rest on "speculation," this Court has no basis on which to conclude that he has rebutted the good faith presumption that attaches to the Government's search. *See Carney*, 19 F.3d at 812; *SafeCard*, 926 F.2d at 1200.

## III. *Exemptions to FOIA*

Garcia's second argument is that even if the Government made an adequate search for documents responsive to Garcia's FOIA request, it has improperly withheld or redacted documents. As described below, this argument is rejected.

 The general purpose of FOIA is to "ensure an informed citizenry ... [which is] needed to check against corruption and hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *accord United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (main purpose of FOIA is to allow the general public to learn "what their government is up to") (citation omitted). FOIA favors broad disclosure and "any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions." *A. Michael's Piano, Inc. v.*

*FTC*, 18 F.3d 138, 143 (2d Cir.), *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994); *accord Ortiz v. Dep't of Health and Human Servs.*, 70 F.3d 729, 732 (2d Cir.1995), *cert. denied*, 517 U.S. 1136, 116 S.Ct. 1422, 134 L.Ed.2d 546 (1996); *Donovan v. FBI*, 806 F.2d 55, 57–58 (2d Cir.1986). Federal courts are required to conduct a *de novo* review of an agency's decision to withhold records requested under FOIA, *Massey v. FBI*, 3 F.3d 620, 622 (2d Cir.1993), and all statutory exemptions must be construed narrowly. *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir.1988). Agency information falling within the terms of a FOIA exemption, however, need not be disclosed. *See, e.g., Halpern v. FBI*, 181 F.3d 279, 287 (2d Cir.1999); *Donovan*, 806 F.2d at 58. The government agency bears the burden of establishing that an exemption from disclosure applies. *Reporter's Comm.*, 489 U.S. at 755, 109 S.Ct. 1468.

Garcia has attacked the Government's claimed exemptions on two grounds: (1) that the Hodes Declaration lacks the requisite specificity required of affidavits and declarations submitted in support of summary judgment motions by the Government in FOIA actions, Garcia Mem at 6–7; and (2) that the documents in question were improperly exempted under Exemptions 7(C), (D), (F) and Exemption 3 of FOIA, *id.* at 7–16. Garcia also has requested an *in camera* review of the contested documents. *Id.* at 7.

## A. *Specificity*

 With regard to Exemption 7(C), the FOIA exemption claimed by the Government to withhold or redact the vast majority of documents in this case, the law is clear that the Government is not required to make a document-by-document evaluation of whether the requested docu-

ments fall within this exemption but rather can rely on "generic determinations" to withhold categories of documents. *See, e.g., Reporter's Comm.,* 489 U.S. at 777–78, 109 S.Ct. 1468 (government can utilize a categorical balancing of interests for documents exempted under 7(C) rather than a document by document evaluation to establish that documents fall within statutory exemption to FOIA); *Local 32B–32J, Serv. Employees Int'l Union, AFL–CIO v. GSA,* 1998 WL 726000, at *4 (S.D.N.Y. October 15, 1998) (When claiming Exemption 7(C), "the government is not required to produce an ... index making a specific, document-by-document showing that the requested material falls within a given exemption") (citing cases). Thus, the Hodes Declaration's description of the grounds for invoking Exemption 7(C) fulfills the "facial adequacy" requirement for Government declarations. *See Carney,* 19 F.3d at 812. Moreover, the use of a coded index, listing the general grounds for an redaction that are reflected in notations made on the documents themselves, has also been held to satisfy the specificity requirement, not only for Exemption 7(C) but also for other exemptions as well. *See Pray v. F.B.I.,* 1998 WL 440843 (S.D.N.Y. Aug.3, 1998). In *Pray,* the court affirmed the validity of a coded index similar to what exists in this case: the index listed FOIA exemptions, including Exemptions 7(C), (D) and (F), and additional coded subsections that stated general grounds for exemption and corresponded to code notations made on the redacted and withheld documents. *Id.* at *1–2. The court held that such a coded index was "adequate for plaintiff and the Court to assess the applicability of the asserted exemptions to the withheld material." *Id.* at *2. As described in further detail in section III.C. below, the same is true here.

## B. *In Camera Review*

■■■■■■ *In camera* review of documents that have been withheld or redacted is disfavored. *Local 3, Int'l Bhd. of Elec. Workers,* 845 F.2d at 1180 ("*In camera* review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion."); *accord Halpern,* 181 F.3d at 295. Accordingly, a court should only order an *in camera* review of the contested documents when the court is unable to assess the validity of the exemptions claimed upon its review of the indexes and affidavits provided by the government agency. *See, e.g., Halpern,* 181 F.3d at 295. The Second Circuit has cautioned that:

> When a government agent can attest in a sworn affidavit that the redactions are necessary, and elaborate on the reasons for the redactions with sufficient specificity, the district court *should be able to rule on the appropriateness of the redactions without conducting an in camera review of the redacted materials.*

*Id.* at 287 (emphasis added). As described in section III.C. below, the Hodes Declaration provides sufficient specificity to enable the Court to make a determination without conducting the requested *in camera* review.

■■■■■■ The District of Columbia Circuit has held that *in camera* inspection is appropriate "when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency." *Quinon v. FBI,* 86 F.3d 1222, 1228 (D.C.Cir.1996); *accord Spirko v. United States Postal Serv.,* 147 F.3d 992, 996 (D.C.Cir.1998). Also significant is whether the number of withheld documents is relatively small and whether "the dispute turns on the contents of the withheld documents, and not the parties' inter-

pretations of those documents." *Quinon*, 86 F.3d at 1228. None of these factors favor *in camera* review in this case. As noted, the affidavit is sufficiently specific to identify the basis of the exemptions and there is no evidence of agency bad faith in making the redactions. A large number of documents have been produced by the Government. Finally, as described in more detail in Section III.C.2 below, the central dispute here is whether certain witnesses are entitled to have their identities kept private and whether the interviews the FBI conducted with them included an implied promise of confidentiality. This determination turns not on the contents of the documents themselves but rather on whether Garcia's background and the context of the investigation as a whole justify treating the interviews as confidential. Examining the contents of the documents would not contribute to the Court's determination of these questions.

## C. *The Claimed Exemptions*

As for Garcia's contention that the Government has improperly redacted and withheld documents under Exemptions 7(C), (D), (F) and Exemption 3 of FOIA, each is analyzed separately in order to determine whether the exemption was properly invoked.

### 1. *Exemption 7(C)*

 Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such [documents] . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "Th[is] exemption applies only if the invasion of privacy that would result from release of the information outweighs the public interest in disclosure." *Massey*, 3 F.3d at 624. If the release of

potentially invasive documents would not further the goals of FOIA, then no public interest is served by the disclosure, and the agency may invoke Exemption 7(C). *See Reporter's Comm.*, 489 U.S. at 775, 109 S.Ct. 1468 (where privacy interests are implicated, the disclosure of documents that do not expose agency action is not mandated because such disclosure does not further "the public interest that the FOIA was enacted to serve").

 "[I]ndividuals, including government employees and officials, have privacy interests in the dissemination of their names." *Massey*, 3 F.3d at 624; *accord Reporter's Comm.*, 489 U.S. at 766, 109 S.Ct. 1468 ("[D]isclosure of records containing personal details about private citizens can infringe significant privacy interests."); *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C.Cir.1981); *McErlean v. United States Dep't of Justice*, 1999 WL 791680, at *9 (S.D.N.Y. Sept. 30, 1999). Case law has identified a number of potential adverse results related to the disclosure of the identities of individuals who appear in documents compiled for law enforcement purposes, concluding that the privacy interests of such individuals must weigh heavily against disclosure. *See, e.g., Diamond v. FBI*, 707 F.2d 75, 77 (2d Cir.1983) (individuals who provided information during an investigation or who participated in the investigation may be subject to embarrassment or reprisal if their identities are revealed), *cert. denied*, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984); *Massey*, 3 F.3d at 622 (noting detrimental effects of disclosure of names of FBI agents and private persons); *Branch v. FBI*, 658 F.Supp. 204, 209 (D.D.C.1987) ("It is generally recognized that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.").

In order to overcome the recognized privacy interest of individuals whose name or other personally identifiable information appears in documents created in the course of a law enforcement investigation, the FOIA requestor must demonstrate that the disclosure of such information would further the goals of FOIA. *Reporter's Comm.*, 489 U.S. at 775, 109 S.Ct. 1468; *Federal Labor Relations Auth. v. United States Dep't of Veterans Affairs*, 958 F.2d 503, 510 (2d Cir.1992) ("Goals other than opening agency action to public scrutiny are deemed unfit to be accommodated under FOIA when they clash with privacy rights.") Where the requestor seeks information concerning the identity of individuals, "the requestor [generally] does not intend to discover anything about the conduct of the agency that has possession of the requested records." *Reporter's Comm.*, 489 U.S. at 773, 109 S.Ct. 1468; *see also SafeCard*, 926 F.2d at 1205 (information concerning the identities of individuals is "simply not very probative of an agency's behavior or performance"). Where the requestor seeks such information in furtherance of private litigation, courts typically reject such disclosure as not falling within the ambit of FOIA's goal of public disclosure of agency action. *See, e.g., Massey*, 3 F.3d at 625 ("the mere possibility that information may aid an individual in the pursuit of litigation does not give rise to a public interest"); *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981) (the use of documents to mount a collateral attack on conviction does not constitute a public interest recognized under FOIA); *Triestman*, 878 F.Supp. at 670 (where "the only interest significantly served by disclosure is the personal interest of the plaintiff, who seeks information for use in a collateral challenge to his conviction," there is "no public interest [to] outweigh[ ] the privacy interests").

Almost all of the disputed documents in this case contained redactions pursuant to Exemption 7(C). *See* Gov't Stat. ¶¶ 27–28; Hodes Decl. ¶¶ 36–57. The Hodes Declaration notes that this exemption was used to protect several subcategories of information. One category was the "names, signatures, dates of birth, telephone numbers and Social Security numbers of FBI Special Agents who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in this investigation." Hodes Decl. ¶ 38. As noted in the Hodes Declaration:

> Special Agents do not choose their assignments. Publicity (adverse or otherwise) regarding any particular investigation they have been assigned may seriously prejudice their effectiveness in conducting other investigations.... It is possible for an individual to carry a grudge which may last for years and because of this grudge they may seek revenge on the agents and other federal employees involved in the investigation. The publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility by an individual toward a particular agent(s).

Hodes Decl. ¶ 38. Similar considerations are cited as justifying the redaction of the names and identifying information of agents at other federal law enforcement agencies (such as the Internal Revenue Service and the Bureau of Alcohol, Tobacco and Firearms), *id.* ¶ 44, as well as names and identifying information of local and state law enforcement personnel. *Id.* ¶ 43.

Another category of information withheld was the "names, identities, addresses and information pertaining to third parties who were of investigative interest to the FBI." *Id.* ¶ 39. The Government notes that "[b]eing linked with any law enforce-

ment investigation carries a strong negative connotation" and release of this information could subject such individuals to harassment or embarrassment. *Id.*

Also withheld was information that would identify individuals who were "only mentioned by persons who were interviewed by the FBI." Hodes Decl. ¶ 40. As was true for the previous category, the FBI asserts that "[d]isclosure of this information could cause unsolicited and unnecessary attention to be focused on these individuals," which could "cast them in an unfavorable or negative light to the public." *Id.* The FBI argues that the privacy of these individuals far outweighs the minimal public interest in this information inasmuch as it gives virtually no information about the FBI's performance of its official function. *See id.* ¶ 37; Gov. Mem at 16–17.[3]

 In each instance noted above, the Court agrees that there is no public interest in the identities of such individuals and what minimal interest might exist is far outweighed by the privacy interests of the persons involved. *See McErlean,* 1999 WL 791680, at *9 ("It is well settled that the privacy interests of witnesses and investigative agents identified in agency documents are given heavy weight."); *accord Bast,* 665 F.2d at 1254 ("Exemption 7(C) affords broad[ ] privacy rights to suspects, witnesses and investigators."). In a similar context, one court has noted:

> it is well-settled that the privacy interests of witnesses and investigative agents identified in agency documents are given heavy weight. *See, e.g., Reporters Comm.,* 489 U.S. at 766, 109 S.Ct. 1468 ("[D]isclosure of records containing personal details about private citizens can infringe significant privacy

interests."). There are three principal reasons as to why these privacy interests are given such significance. First, disclosure of the names of individuals who provided information during an investigation may subject such individuals to threats of reprisal. *See Diamond v. Federal Bureau of Investigation,* 707 F.2d 75, 77 (2d Cir.1983); *Williams v. McCausland,* No. 90 Civ. 7563, No. 91 Civ. 7282, 1994 WL 18510, at *12 (S.D.N.Y. Jan. 18, 1994). Second, disclosure of the identities of individuals whose names have turned up in the investigation could subject the individuals to the stigma of being associated with a criminal or federal investigation. *See Reporters Comm.,* 489 U.S. at 767, 109 S.Ct. 1468; *Massey,* 3 F.3d at 624. Third, the disclosure of the names of the law enforcement personnel involved in an investigation could possibly lead to harassment and interfere with the performance of the law enforcement officer's duties. *See Massey,* 3 F.3d at 622 (finding that names of FBI agents are exempt from FOIA disclosure); *Doherty v. Department of Justice,* 775 F.2d 49, 52 (2d Cir.1985) (stating that identities of FBI agents, personnel, and employees of government agency are embraced by Exemption 7(C)).

*Germosen v. Cox,* 1999 WL 1021559, at *15 (S.D.N.Y. November 9, 1999). Also, although "a court does not usually take the requestor's identity into consideration" in determining whether Exemption 7(C) applies, *Manna v. United States Dep't of Justice,* 51 F.3d 1158, 1166 (3d Cir.), *cert. denied,* 516 U.S. 975, 116 S.Ct. 477, 133 L.Ed.2d 405 (1995), where the identity of the plaintiff is material to the possibility of retaliation against individuals whose iden-

---

**3.** A final category of redactions was names of individuals who supplied information under an express or implied grant of confidentiality.

Hodes Decl. ¶¶ 41–42. This category is discussed further *infra* with respect to Exemption (b)(7)(D).

tities are contained in the requested documents, the court may consider this as a factor. *See, e.g., id.* (finding plaintiff's "position in the hierarchy of a particularly influential and violent La Cosa Nostra family" to be "highly material to the protection of individual privacy interests.")

Garcia has not demonstrated any public interest weighing in favor of the disclosure of this information. Instead, he merely claims that its disclosure would "reflect[ ] directly on how the FBI conducts its business and the public's interest in same." Garcia Stat. at ¶ 10; *see also* Garcia Mem. at 11 ("releasing these state actors [sic] and officer's information would go a long way towards shedding light on their actions within the larger arena of the public corruption investigation"). The connection between the release of the information sought and "how the FBI conducts its business," however, is extremely tenuous. It is more plausible that the information would be useful to support any private litigation Garcia intends to institute. *See, e.g.,* Garcia Mem. at 4 ("Plaintiff seeks records which he believes exist that will help him prove that his constitutional rights to a fair trial were violated."). In the absence of any "public purpose to outweigh[ ] the privacy interest[s]" in this case, *Triestman,* 878 F.Supp. at 670, the exemptions claimed by the Government pursuant to Exemption 7(C) are appropriate and the Government is not obligated to disclose the very personal information sought by Garcia. *See Brown,* 658 F.2d at 75 (absent an identifiable public interest to be served by disclosure, the court "cannot allow the plaintiff's personal interest to enter into the weighing or balancing process"). Furthermore, Garcia's violent criminal history and his history of retaliation against witnesses, *see* Kennedy Decl., Ex-

hibits B, C, D and F, weigh against the revelation of the personal information of any of the agents or other witnesses whose identities are contained in the documents in question.

 Finally, Garcia's claims of "government" wrongdoing largely (though not exclusively, *see* Garcia Mem. at 9–10) concern the alleged misconduct of agencies and individuals affiliated with the New York state government. *See, e.g.,* Garcia Stat. ¶¶ 3, 5, 17 (complaints concerning wrongdoing by the state police); *id.* at ¶¶ 8, 14, 15, 26, 17 (complaints concerning assistant district attorney). The discovery of wrongdoing at a state as opposed to a federal agency, however, is not a goal of FOIA. *See Landano v. United States Dep't of Justice,* 956 F.2d 422, 430 (3d Cir.1992) ("[T]here is no FOIA-recognized public interest in discovering wrongdoing by a *state* agency") (emphasis in original), *vacated on other grounds,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993); *see also Thomas v. Office of the United States Attorney for the E. Dist. of New York,* 928 F.Supp. 245, 251 (E.D.N.Y.1996) ("the FOIA is only directed to the conduct of federal agencies and cannot therefore serve as a basis for requests about the conduct of a state agency, such as a District Attorney's Office"). Accordingly, to the extent that Garcia claims that these documents would bring to light state wrongdoing, such a claim does not constitute the type of public interest recognized under FOIA as necessary to overcome the privacy interests implicated under Exemption 7(C). *See Thomas,* 928 F.Supp. at 251 ("[E]ven assuming a strong public interest in disclosure of wrongdoing [by a state agency], the FOIA is not the vehicle for seeking such information.").[4]

---

4. Garcia's allegations of improprieties relating to the investigation of his conduct do not

alter this analysis. It is established that "once the government has demonstrated that

## 2. *Exemption 7(D) of FOIA*

 Exemption 7(D) of FOIA exempts from disclosure:

[R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). Where, as here, the records pertain to a criminal investigation conducted by the FBI, the second clause of this exemption applies. *See Ferguson*, 957 F.2d at 1069. Thus all information furnished by a "confidential source" may be withheld. *Id.* ("Once it is shown that information was provided by a confidential source, the information itself is protected from disclosure....").

 Pursuant to Exemption 7(D), "[a] source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes." *United States Dep't of Justice v. Landano*, 508 U.S. 165, 174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). Exemption 7(D) assures that confidential sources are protected from retaliation in order to prevent the loss of

valuable sources of information. *See United Techs. v. NLRB*, 777 F.2d 90, 94 (2d Cir.1985). A source is confidential if he or she "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Landano*, 508 U.S. at 172, 113 S.Ct. 2014 (citation and internal quotation marks omitted). *Landano* rejected a broad inference that any communication between a source and the FBI was automatically "confidential" by implication. *Id.* at 179, 113 S.Ct. 2014. Rather, it held that an implied assurance of confidentiality could be found only where the circumstances of the criminal investigation "provide a basis for inferring confidentiality." *Id.* at 181, 113 S.Ct. 2014. Nonetheless, "when certain circumstances characteristically support an inference of confidentiality, the Government ... should be able to claim ... Exemption 7(D) without detailing the circumstances surrounding a particular interview." *Id.* at 177, 113 S.Ct. 2014. Thus, "[t]here may well be ... generic circumstances in which an implied assurance of confidentiality fairly can be inferred." *Id.* at 179, 113 S.Ct. 2014. *Landano* noted that the "nature of the crime that was investigated and the source's relation to it" are particularly relevant in determining whether there was an implied assurance of confidentiality. *Id.*

 An inference of confidentiality is typically found where the crime was of a serious or potentially violent nature and the source had a close relationship to the individuals being investigated. *See, e.g., Engelking v. DEA*, 119 F.3d 980, 980 (D.C.Cir.1997) (implied confidentiality found both because crime investigated concerned large-scale drug trafficking and

---

the records were compiled in the course of an investigation conducted by a law enforcement agency, the purpose or legitimacy of such executive action are not proper subjects for

judicial review." *Halpern*, 181 F.3d at 296 (2d Cir.1999); *accord Ferguson v. FBI*, 957 F.2d 1059, 1070 (2d Cir.1992); *Williams v. FBI*, 730 F.2d 882, 883 (2d Cir.1984).

weapons possession and because a sufficiently close relationship existed between the source and the criminal activities investigated), *cert. denied,* 522 U.S. 1094, 118 S.Ct. 890, 139 L.Ed.2d 876 (1998); *Ferguson v. FBI,* 83 F.3d 41, 43 (2d Cir. 1996) (implied confidentiality upheld where sources had a "close" relationship with requester, "all of whom had reason 'to fear reprisal and harassment if their cooperation with the FBI were to become known' ") (quoting affidavit of FBI agent); *Ortiz,* 70 F.3d at 734 ("serious and damaging allegations of misconduct that could initiate criminal investigations or lead to other serious sanctions can reflect an implied assurance of confidentiality"); *Williams v. FBI,* 69 F.3d 1155, 1159 (D.C.Cir.1995) (confidentiality may be inferred where the crimes investigated were related to a conspiracy to overthrow the government and the sources were sufficiently close to the alleged perpetrators).

██ In other instances, the nature of the crime itself coupled with information about the subject of the investigation provides a sufficient basis for inferring confidentiality. *See, e.g., Jimenez v. FBI,* 938 F.Supp. 21, 30 (D.D.C.1996) (informant could reasonably infer a promise of confidentiality "given the serious nature of the criminal [drug] charges being investigated, and the fact that the [subject] had previously harassed and threatened government informants"); *Delviscovo v. FBI,* 903 F.Supp. 1, 3 (D.D.C.1995) ("A major racketeering investigation focusing on groups and individuals involved in extortion, gambling, loan sharking, narcotics trafficking and interstate transportation of stolen property gives rise to such an inference [of confidentiality] without the need for elaboration.").

██ In this case, 72 pages were redacted and 210 pages withheld pursuant to Exemption 7(D). Gov't Stat. ¶ 28. The Hodes Declaration states that certain confidential sources implicated in these documents were given express grants of confidentiality by the FBI, and that disclosure of the redacted and withheld documents would reveal the identity of these confidential sources. Hodes Decl. ¶¶ 48–49. With respect to such individuals, "[e]xpress assurances of confidentiality clearly meet the requirements of 7(D)." *Manna,* 51 F.3d at 1167.

The Hodes Declaration also states that certain sources had implied grants of confidentiality. Hodes. Decl. ¶¶ 50–52. With respect to the implied grant of confidentiality, the Hodes declaration makes specific allegations that relate to its investigation of Garcia. The Declaration states:

> Exemption (b)(7)(D)–2 was asserted to protect the names and identities of individuals who provided information about plaintiff and/or his criminal activities. The circumstances of these individuals providing information to the FBI clearly support an implication of confidentiality. *Each of these individuals protected had a specific personal or business relationship with plaintiff. Plaintiff is a former law enforcement officer who was investigated by the FBI for involvement in the corruption of state and local law enforcement officials. Plaintiff was later convicted, at the State level, for a robbery and was charged with intimidating a witness who was scheduled to testify against him at the robbery trial. Some individuals have indicated to law enforcement personnel that they fear reprisal from plaintiff.* Thus, the nature of these crimes, corruption of state and local law enforcement officials, and each of the individuals' specific relationship to plaintiff support an assumption that such information was provided on a confidential basis.

Hodes Decl. ¶ 50 (emphasis added).[5] In addition, the Hodes Declaration notes that Exemption 7(D) was "asserted to protect the name and identity of a state governmental employee who provided information to the FBI regarding plaintiff and his criminal activities" and who provided "professional opinions as well as observations" concerning Garcia. *Id.* at ¶ 52.

The Hodes Declaration combined with Garcia's conviction record together demonstrate that the crimes underlying the criminal investigation at issue in this case were serious and that the sources who communicated with the FBI were sufficiently close to the investigation to warrant the inference of confidentiality. *See Landano,* 508 U.S. at 179, 113 S.Ct. 2014. The criminal investigation in question was an investigation by the FBI into serious allegations of corruption within the state police. Hodes Decl. ¶ 50. The sources interviewed by the FBI with respect to whom documents were withheld or redacted "had a specific personal or business relationship with plaintiff." *Id.* Moreover, Garcia was convicted of two violent felonies, including conspiring to kill an individual who had testified against him at his robbery trial. *See* Exhibits A, B, C, D and F to Kennedy Decl. Garcia's violent and criminal behavior supports the Government's contention that these sources expected their identities to be kept private in order to avoid retaliation by Garcia. *See Ortiz,* 70 F.3d at 734; *Pray,* 1998 WL 440843, at *4; *Jimenez,* 938 F.Supp. at 30. Finally, the Hodes Declaration states that there exist individuals who have "indicated to law enforcement personnel that they fear reprisal from the plaintiff." Hodes Decl. ¶ 50. Taken as a whole, the facts submitted by the Government in support of its assertion of implied promises of confidentiality are akin to what was upheld by the Second Circuit in *Ferguson,* 83 F.3d at 43 (sources had "a 'close' relationship with Ferguson, all of whom had reason 'to fear reprisal and harassment if their cooperation with the FBI were to become known' ").

■ Garcia argues that there was a waiver of any express or implied promises of confidentiality by virtue of the public testimony at his trial. Garcia Mem. at 5, 12. However, nothing in the statute supports this doctrine of waiver and case law explicitly rejects it. *See Irons v. FBI,* 880 F.2d 1446, 1456–57 (1st Cir.1989) (en banc); *see also Ferguson,* 957 F.2d at 1068 (adopting *Irons* on this point). For the same reason, the Court also rejects Garcia's suggestion that there have been inconsistencies in the redactions that would suggest a waiver by the Government of its ability to invoke Exemption 7(D). *See, e.g.,* Garcia Mem. at 7, 8. In addition, as noted by the Government, names of certain individuals not redacted in the documents were already known to Garcia; in other instances the names involved individuals who had submitted privacy waivers. *See* Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment, dated April 19, 2001, at 7–8.

Garcia has provided the Court with no basis on which to conclude that the FBI did not give either explicit or implicit assurances of confidentiality to the confidential sources in question as described in the Hodes Declaration. Accordingly, the Gov-

---

**5.** While Hodes states that Garcia was "charged with intimidating a witness who was scheduled to testify at his trial," Hodes Decl. ¶ 50, Garcia's conviction record shows that he was convicted of conspiracy to murder a witness who testified at his trial (namely, Lisa Seymour, who was the co-perpetrator of the armed robbery that formed the basis for his robbery conviction). *See* Kennedy Decl., Exhibits D and F. If anything, the conviction for conspiracy to murder provides an even stronger basis for concluding that Garcia represents a danger to witnesses who provide adverse information about him.

ernment's redaction or withholding of such documents was authorized under Exemption 7(D) of FOIA.

### 3. *Exemption 7(F)*

■ Under Exemption 7(F), documents may be exempted from disclosure if they are "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The Government is entitled to invoke this exemption where the safety of the individual in question would be jeopardized if his or her identity were revealed. *See, e.g., Malizia v. United States Dep't of Justice,* 519 F.Supp. 338, 351 (S.D.N.Y.1981) (withholding of agents' identities proper where revelation of information could "unnecessarily jeopardize[ ]" the agents' lives). In this case, the FBI invoked this exemption, in conjunction with other exemptions, for approximately 15 pages of the 421 pages of documents at issue, *see* Gov't Stat., ¶ 27, to withhold three limited categories of information: the names, signatures or other identifying information concerning FBI Special Agents who were responsible for conducting, supervising, and/or maintaining this investigation; the names or other identifying information concerning non-FBI government agents; and the names and/or identifying information concerning private citizens and third parties who provided information to the FBI concerning the criminal activities of plaintiff. Hodes Decl. ¶ 53–57.

The Hodes Declaration notes that the "primary concern of the FBI in the reviewing and releasing of documents involving [Garcia] is the possibility of harassment and potential violent retaliation against sources of information." Hodes Decl. ¶ 54. With respect to each category, the Hodes Declaration notes that "[d]isclo-

sure of the identities of these individuals could immediately endanger their families, lives and physical safety." *Id.* ¶¶ 55–57.

■ The same reasons that underlay the applicability of Exemption 7(D) in this case (with regard to confidential source information) also justify the applicability of Exemption 7(F). Garcia has a history of retaliation against individuals who have provided information about him to law enforcement agencies: specifically, his conviction for conspiring to murder a witness in the robbery case against him. *See* Exhibits D, F to Kennedy Declaration. In evaluating the validity of an agency's invocation of Exemption 7(F), the court should "within limits, defer to the agency's assessment of danger." *See Linn v. Dep't of Justice,* 1995 WL 631847, at *9 (D.D.C. Aug. 22, 1995) (citing *Gardels v. CIA,* 689 F.2d 1100, 1104–1105 (D.C.Cir.1982)). The Government's evidence of Garcia's violent criminal history and propensity for retaliation is sufficient to support its invocation of Exemption 7(F), and this Court will defer to its assessment of danger in this case. *See Linn,* 1995 WL 631897, at *9. Accordingly, the Government properly redacted and withheld documents pursuant to Exemption 7(F).

### 4. *Exemption 3*

■ Exemption 3 of FOIA exempts documents from disclosure where such disclosure is exempted by another statute. 5 U.S.C. § 552(b)(3). Fed R. Crim P. 6(e) represents such a statute and, thus, documents related to the grand jury process are exempt from disclosure under Exemption 3. *See, e.g., Local 32B–32J, Serv. Employees Int'l Union, AFL–CIO v. GSA,* 1998 WL 726000, at *6 (S.D.N.Y. October 15, 1998) ("It is well established that [Fed. R.Crim.P. 6(e) ], which imposes a general requirement of secrecy for information relating to the grand jury process, qualifies as an Exemption 3 withholding statute")

(citing cases); *accord McDonnell v. United States,* 4 F.3d 1227, 1246–47 (3d Cir. 1993); *Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.,* 656 F.2d 856, 868 (D.C.Cir.1981) (Rule 6(e)'s "ban on disclosure is for FOIA purposes absolute and falls within subpart (A) of Exemption 3"); *Malizia,* 519 F.Supp. at 345–46; *Hiss v. Dep't of Justice,* 441 F.Supp. 69, 70 (S.D.N.Y.1977).

The Government withheld two documents pursuant to Exemption 3, *see* Gov't Stat. ¶ 27, because the information constituted grand jury materials. Hodes Decl. ¶ 35. Accordingly, the two documents in question were properly withheld pursuant to Exemption 3.

### Conclusion

For the foregoing reasons, the Government's motion for summary judgment is granted in its entirety. Judgement shall be entered dismissing the complaint.

SO ORDERED.