**RELIANT ENERGY POWER GENERATION, INC. et al., Plaintiffs,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Defendant.**

**Civil Action No. 04–774 (PLF).**

United States District Court, District of Columbia.

Nov. 8, 2007.

Randolph Quaile McManus, Steven R. Hunsicker, Baker Botts, LLP, Washington, DC, for Plaintiffs.

Blanche L. Bruce, Pamela D. Huff, U.S. Attorney's Office, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

PAUL L. FRIEDMAN, District Judge.

Rule 72(b) of the Federal Rules of Civil Procedure authorizes the referral of dispositive motions to a magistrate judge for a report and recommendation. *See* FED. R.CIV.P. 72(b); *see also* Local Civil Rule 72.3(a). When a party files written objections to any part of the magistrate judge's recommendation, the court considers *de novo* those portions of the recommendation to which objections have been made, and "may accept, reject, or modify the recommended decision[.]" FED.R.CIV.P. 72(b).

Defendant's motion for summary judgment and plaintiff's motion for summary judgment were referred to Magistrate Judge Alan Kay for a report and recommendation pursuant to Local Civil Rule 72.3(a) on April 21, 2006. On July 31, 2006, Magistrate Judge Kay issued a report and recommendation recommending that this Court deny both motions and order defendant to produce the requested documents or submit a sufficiently detailed *Vaughn* index justifying its claims of exemption. No objections were filed, and the Court adopted that report and recommendation on August 22, 2006, denying both motions.

On January 12, 2007, defendant filed its second motion for summary judgment, attaching an affidavit from Wilbur T. Miller, a senior attorney in defendant's General and Administrative Law section, in lieu of a formal *Vaughn* index. Plaintiff filed its second motion for summary judgment on February 20, 2007. On May 3, 2007, this Court again referred the parties' motions for summary judgment to Magistrate Judge Kay for a report and recommendation. On September 11, 2007, Magistrate Judge Kay ordered defendant to produce for *in camera* review documents that it withheld under Freedom of Information Act Exemption 5. On October 5, 2007, Magistrate Judge Kay issued a report and recommendation recommending that this Court grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment. Plaintiff filed an objection to the report and recommendation on October 22, 2007, and defendant filed a response to plaintiff's objection on November 2, 2007.

Upon consideration and *de novo* review of the October 5, 2007 report and recommendation of Magistrate Judge Kay, and upon consideration of the objections and responses thereto and the entire record herein, the Court hereby adopts and approves the report and recommendation of Magistrate Judge Kay in its entirety. An Order consistent with this Opinion will issue this same day.

## *REPORT AND RECOMMENDATION*

ALAN KAY, United States Magistrate Judge.

The trial court referred this matter to the undersigned pursuant to Local Civil Rule 72.3(a) for a Report and Recommendation on Defendant FERC's Motion for Summary Judgment [26] and Plaintiff Reliant's Motion for Summary Judgment [27]. (*See* [30] Order dated 5/3/07.) Both parties seek summary judgment on the merits of Plaintiff's Freedom of Information Act ("FOIA") request. Based on the submissions of the parties and an *in camera* review of documents submitted by FERC, the undersigned recommends that the trial

court grant Defendant's Motion for Summary Judgment [26] and deny Plaintiff's Motion for Summary Judgment [27].

## I. BACKGROUND [1]

In the wake of the 2000–2001 California energy crisis, the Staff of the Federal Energy Regulatory Commission ("FERC") conducted a fact-finding investigation to determine, among other things, whether significant increases in gas prices in California were the result of competitive market conditions or whether certain companies' trading practices unfairly inflated gas prices. *See* Final Report on Price Manipulation in Western Markets, Fact–Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices (hereinafter "Staff Report"), Executive Summary at 3–5 (FERC March 26, 2003) (Dkt. No. PA02–2–000), *available at* http://www.ferc. gov/legal/ma j–ord–reg/land–docs/PART–I–3–26–03.pdf.[2]

In March of 2003, FERC Staff released the final report detailing their conclusions from the investigation. *See id.* Among the conclusions reached by the Staff was that Reliant Energy Power Generation, Inc. and Reliant Energy Services, Inc. ("Reliant") "engaged in a high-volume, rapid-fire trading strategy . . . b[uying] and s[elling] [at] many times its needs. . . ." *Id.*, Ch. II at 1. Chapter II of the Staff Report concluded that Reliant's trading activities "significantly increased the price of gas in that [California] market" and that "gas prices [were] not a

result of competitive conditions." *Id.* The Staff Report referred to Reliant's trading practices as "churning." *Id.* According to Reliant, it is now facing multiple lawsuits seeking as much as $2.75 billion in damages, largely as a result of the factual findings and conclusions published in the report. (Compl.¶ 14.)

On April 21, 2003, Reliant submitted a FOIA request to FERC seeking any documents either relied on by Staff in preparing Chapter II of the Report or related to its conclusion that Reliant's trading activities were responsible for the dramatic increase in gas prices. (Compl., Ex. A.) Specifically, Reliant sought

> copies of the workpapers, input data and other documents that comprise or explain the 'econometric analysis' relating to or underlying Staff's conclusion in preparing Chapter II of the Staff Report, . . . and/or that support or explain the purported showing of the 'econometric analysis of the effect of Reliant's trading on market prices . . .'[3]

(*Id.*) FERC responded a month later without providing any responsive documents. After noting that the data sets used for Chapter II were publicly available, FERC withheld all remaining responsive documents. (Compl., Ex. B.) FERC claimed that all internal working papers responsive to Reliant's request were deliberative in nature and therefore covered by FOIA's Exemption 5. *See* 5 U.S.C. § 552(b)(5) (2000)

---

1. This background section is taken, in part, from the undersigned's Report and Recommendation dated 7/31/06 [22].

2. The "Staff Report" reflects the views of Staff only. It was not considered or adopted by the full Commission. *See* Staff Report, Executive Summary at 4.

3. This econometric analysis purportedly showed 1) "[a] clear, robust, and statistically

significant relationship-controlling for other factors-between Reliant's churning and prices rising[,]" 2) that "[t]he price rise generally persisted for a few days before ultimately dissipating[,]" and 3) that "[g]as prices in Southern California were, on average, more than $8.54 MMBtu/d higher in December 2000 than they would have been absent Reliant's EOL [EnronOnline] trading activity." *See* Staff Report, Ch. II at 8.

Reliant appealed. (Compl., Ex. C.) FERC's General Counsel denied the appeal but conceded that the work papers reflected "other ways, besides the final way, of manipulating the deliverables or raw data." (*Id.*, Ex. D at 4.) In a follow-up letter, FERC's General Counsel explained that the internal work papers responsive to Reliant's request were actually earlier drafts of Chapter II. (*Id.*, Ex. E.) FERC further claimed that it had not maintained "in any form, printed or electronic" any of the "varying econometric analyses performed or considered in connection with Chapter II" except those that were adopted in the final report. (*Id.*)

FERC filed the present action on May 13, 2004. A few months later, FERC amended its response to Plaintiff's original FOIA request to include newly discovered documents that had been in the possession of Analysis Group, consultants to FERC on the Staff Report. (Pl.'s Mot. at 4.) Of these documents, FERC released the "varying econometric analyses" performed in connection with Chapter II, but withheld other documents, including memoranda and emails. (*Id.*) In its Answer, FERC conceded that it did not provided an itemized index of any withheld documents, but maintained that it validly withheld all responsive documents pursuant to the deliberative process privilege encompassed by FOIA's Exemption 5. (Answer ¶¶ 26–27.)

On July 29 and August 19, 2004 respectively, FERC and Reliant filed Motions for Summary Judgment and the trial court referred both motions to the undersigned for a Report and Recommendation. The undersigned's recommendation, which was adopted by the trial court on August 22, 2006, was that the trial court should deny both motions and order FERC to either produce the requested documents to Reliant or submit a *Vaughn* Index [22].[4] On January 12, 2007, FERC filed its second Motion for Summary Judgment, attaching an affidavit from Wilbur T. Miller ("Miller Declaration"), a senior attorney in FERC's General and Administrative Law section, in lieu of a formal *Vaughn* index. Reliant filed its second Motion for Summary Judgment on February 20, 2007.

On September 11, 2007, the undersigned ordered FERC to produce for *in camera* review documents that it withheld under FOIA Exemption 5. ([31] Order dated 9/11/07.) This included 73 documents identified in the Miller Declaration as report drafts, 184 documents identified as internal discussions, 26 documents identified as data analysis, and 7 documents that FERC withheld solely on the basis of the attorney-client privilege. (*Id.*) The undersigned did not order FERC to produce for *in camera* review the documents that it withheld pursuant to Exemptions 4 or 6.

## II. *LEGAL STANDARD*

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party points to facts showing that there is an absence of evidence supporting the non-moving party's case, the nonmoving party may not rest on mere allegations, but must point to specific facts in the record showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477

---

4. The undersigned also made recommendations regarding the adequacy of FERC's search for responsive documents, which is not at issue in the parties' renewed motions for summary judgment.

U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere scintilla of evidence in support of [the nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving] party." *Id.* at 252, 106 S.Ct. 2505. In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

■ Summary judgment is the procedural vehicle by which Freedom of Information Act ("FOIA") cases are typically resolved. *Harrison v. Executive Office for U.S. Attorneys*, 377 F.Supp.2d 141, 145 (D.D.C.2005). A defendant in a FOIA action is entitled to summary judgment if the defendant proves that it has fully discharged its obligations under the Act. *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C.Cir.1983). Specifically, the agency must demonstrate that (1) it conducted an adequate and good faith search for the requested documents, *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C.Cir.1990);[5] (2) any documents that it withheld fall within one of the FOIA exemptions, *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C.Cir.1993); and (3) it disclosed all "reasonably segregable," nonexempt material, *Mead Data Cent. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C.Cir.1977). In determining whether the defendant agency has met this burden, "the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Id.*

## III. ANALYSIS

### A. *Applicability of Claimed Exemptions to Withheld Material*

Under FOIA, an agency is obligated to produce requested information unless it falls under one of the Act's nine exemptions. *Pub. Citizen Health Research Group v. Nat'l Insts. of Health*, 209 F.Supp.2d 37, 42 (D.D.C.2002) (citing *Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 150–51, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989)). In hearing claims brought under FOIA, the district court has jurisdiction to "order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

■ The agency bears the burden of demonstrating that the documents it has withheld fall within one of the enumerated exemptions. 5 U.S.C § 552(a)(4)(B); *Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C.Cir.2000) ("... FOIA itself places the burden on the agency to sustain the lawfulness of specific withholdings in litigation."). The placement of this burden on the government is consistent with the purpose behind FOIA, which is to provide public access to government documents. *Beck*, 997 F.2d at 1490–91. While a *Vaughn* index is a common device used by agencies to meet this burden of proof, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), a court may also award summary judgment on the basis of information provided by the agency in affidavits. Such affidavits must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [may not be] controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). If an agency fails to meet its burden through the submission of affidavits or a *Vaughn* index, the Court may

5. As stated *supra* n. 4, adequacy of search is no longer a disputed issue.

order an *in camera* review of the withheld materials to determine whether the agency complied with its obligations under FOIA. *See, e.g., Taylor v. Dep't of Justice,* 257 F.Supp.2d 101, 114 (D.D.C.2003) (*in camera* review unnecessary when agency's declaration and *Vaughn* index provided court with information about nature of the withheld documents).

In this case, FERC is claiming that it withheld responsive documents under FOIA Exemptions 4, 5, and 6. The undersigned evaluated the application of the claimed Exemptions to the withheld material by reviewing the Miller Declaration and the documents produced by FERC in response to the undersigned's Order of September 11, 2007.

### 1. *Exemption 4–Commercial Information*

█ Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). This Circuit has held that the terms "commercial" and "financial" "should be given their ordinary meanings." *Pub. Citizen Health Research Group v. Food & Drug Admin.,* 704 F.2d 1280, 1290 (D.C.Cir. 1983). The word "person" includes not only individuals, but also corporations and other organizations. 5 U.S.C. § 551(2). Commercial or financial information is deemed confidential if disclosure of the information is likely either "(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks and Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C.Cir.1974) (footnote omitted).

Regarding the documents that FERC withheld under Exemption 4, FERC asserts:

> Two contain financial and trading data of a company other than Reliant. The other two contain studies of trading practices done by a company other than Reliant. All four were submitted to FERC voluntarily by these companies and were designated confidential. Release of these documents would significantly impair FERC's ability to obtain voluntary cooperation from regulated entities during its investigations.

(Miller Decl. ¶ 32.) Reliant does not dispute the applicability of Exemption 4 to these documents, focusing instead on whether FERC waived this Exemption by failing to raise it in its first Motion for Summary Judgment and whether parts of these documents are segregable. (Pl.'s Mot. at 20–21.) Accordingly, the undersigned finds that FERC met its burden of establishing that it properly invoked Exemption 4. First, the information is commercial-two documents contain financial and trading data and two contain studies of trading practices. Second, the information was obtained from a person, namely companies that voluntarily report information to the agency. Finally, the information is confidential under the second prong of the *National Parks* standard discussed above because disclosure would impair FERC's ability to collect this data in the future.

█ Reliant argues that FERC's invocation of Exemption 4 in its second Motion for Summary Judgment is improper because it did not raise this Exemption in its first Motion for Summary Judgment.[6]

---

**6.** Reliant raises an identical waiver argument with respect to FERC's invocations of the attorney's client privilege and Exemption 6.

(*See* Pl.'s Mot. at 11–12, 20.) Because Reliant cites one set of case law in support of this argument, the undersigned will only address

(Pl.'s Mot. at 20.) In support of this contention, Reliant cites to case law from this Circuit for the proposition that "agencies [may] not make new exemption claims to a district court after the judge has ruled in the other party's favor." *Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 580 (D.C.Cir.1987) (citing *Holy Spirit Assoc. v. CIA*, 636 F.2d 838, 846 (D.C.Cir.1980)).[7] Reliant argues that when the trial court denied FERC's first Motion for Summary Judgment (*see* Order dated 8/22/06) it effectively ruled in Reliant's favor and thereby precluded FERC from further justifying its withholdings by raising a new Exemption. (Pl.'s Mot. at 11.) The undersigned disagrees that denial of FERC's first Motion for Summary Judgment is tantamount to a ruling in Reliant's favor, especially considering that the trial court also denied Reliant's first Motion for Summary Judgment.[8] (*See* Order dated 8/22/06.) The purpose behind the waiver rule described in *Senate of Puerto Rico* is to promote FOIA's goals of "efficient, prompt, and full disclosure of information." 823 F.2d at 581 (citing *Jordan v. Dep't of Justice*, 591 F.2d 753, 755 (D.C.Cir.1978) (en banc)). The undersigned does not believe that the inclusion of new bases for withholding in FERC's second Motion for Summary Judgment thwarted these statutory goals. Accord-

ingly the undersigned concludes that FERC did not waive its right to invoke Exemption 4.

### 2. *Exemption 5–Civil Discovery Privileges*

■ Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This Exemption demonstrates "that Congress intended that agencies should not lose the protection traditionally afforded through the evidentiary privileges simply because of the passage of the FOIA." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C.Cir.1980). Therefore Exemption 5 allows an agency to invoke civil discovery privileges, including the attorney-client privilege, attorney-work product privilege, and the executive deliberative process privilege, to justify the withholding of documents that are responsive to a FOIA request. *Id.* (citations omitted).

In this case, FERC invoked the deliberative process privilege with respect to 296 documents. (Miller Decl. ¶¶ 18, 22, 26, 29.) These documents are divided into four categories: report drafts, internal discussions, draft orders, and data analyses.[9]

---

the waiver issue as it relates to Exemption 4. However, the same analysis applies to whether FERC waived its right to invoke the attorney-client privilege and Exemption 6 as grounds for withholding documents, which the undersigned concludes its has not.

7. Reliant also cites to *Maydak v. Dep't of Justice*, 218 F.3d 760 (D.C.Cir.2000), which stands for the proposition that an agency may not raise an Exemption for the first time on appeal. Whether an appellate court would entertain FERC's recent invocation of Exemptions 4 and 6 and the attorney-client privilege is of no moment in the context of the undersigned's recommendation on the present Motions for Summary Judgment.

8. The facts in *Holy Spirit* also support this conclusion. In that case, the CIA attempted, in a Motion for Partial Relief from Judgment, to provide additional explanations for why it withheld documents. 636 F.2d at 846. A judgment against the CIA, ordering it to produce certain documents that the trial court found were improperly held, was clearly a ruling in Holy Spirit's favor whereas the trial court's denial of FERC's Motion for Summary Judgment is not clearly a ruling in Reliant's favor.

9. Reliant no longer requests that FERC produce the documents identified in the Miller Declaration as "draft orders." (Pl.'s Mot. at 2.)

FERC also withheld seven additional documents solely on the basis of the attorney-client privilege. (*Id.* ¶ 33.)

### a. *Deliberative Process Privilege*

 To withhold a responsive document under the deliberative process privilege, the agency must demonstrate that the document is "both predecisional and deliberative." *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1537 (D.C.Cir.1993). A communication is predecisional if "it was generated before the adoption of an agency policy" and it is deliberative if "it reflects the give-and-take of the consultative process." *Coastal States,* 617 F.2d at 866.[10] The privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.*

 Factual information is generally not protected by the deliberative process privilege. *Petroleum Info. Corp. v. Dep't of the Interior,* 976 F.2d 1429, 1434 (1992). However, the distinction between facts and opinions is not necessarily dispositive; purely factual material is protected by Exemption 5 if its disclosure "may so expose the deliberative process within an agency." *Id.* (quoting *Mead Data,* 566 F.2d at 256). Accordingly, an agency may withhold factual material under two sets of circumstances. First, an agency may withhold a factual portion of a document if, in creating the document, the author undertook to separate significant facts from insignificant facts. *Montrose Chem. Corp. v. Train,* 491 F.2d 63, 71 (D.C.Cir.1974). The rationale is that the act of selecting facts for

inclusion in a document "constitutes an exercise of judgment by an agency." *Id.* Second, courts have allowed agencies to withhold factual information that is "inextricably intertwined" with deliberative material. *Delta Ltd. v. Customs and Border Prot. Bureau,* 384 F.Supp.2d 138, 152 (D.D.C.2005), *vacated in part on other grounds by Delta Ltd. v. Customs and Border Prot. Bureau,* 393 F.Supp.2d 15 (D.D.C.2005). Overall, factual material in withheld documents must be examined "in light of the policies and goals that underlie the deliberative process privilege." *Wolfe v. Dep't of Health and Human Servs.,* 839 F.2d 768, 774 (D.C.Cir.1988).

The deliberative process privilege reflects Congress's judgment that public disclosure of predecisional, deliberative documents would inhibit "the full and frank exchange of ideas on legal policy matters" within an agency. *Mead Data,* 566 F.2d at 256. As the Supreme Court has stated, "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision-making process." *United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). A court reviewing a deliberative process privilege claim must therefore ask "whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States,* 617 F.2d at 866.

 The deliberative process privilege is highly "dependent upon the individual document and the role it plays in the ad-

---

**10.** Reliant does not appear to contest that the withheld documents are predecisional, focusing instead on whether the documents are deliberative. (*See* Pl.'s Mot. at 14.) Therefore the undersigned concludes that FERC has met its burden of establishing that the withheld materials were predecisional and will limit the analysis to whether they are deliberative.

ministrative process." *Id.* at 867. Accordingly, in addition to satisfying the court that the withheld documents were predecisional and deliberative, the agency also has the burden of demonstrating the type of deliberative process involved and the role of each withheld document in that process. *Id.* at 868 (citing *Vaughn v. Rosen,* 523 F.2d 1136, 1146 (D.C.Cir.1975)). If an agency cannot meet this burden through affidavits, the court may conduct an *in camera* review to determine whether the deliberative process privilege was properly invoked. *See, e.g., Center for Auto Safety v. EPA,* 731 F.2d 16, 23 (D.C.Cir.1984).

 The first category of documents that FERC withheld pursuant to the deliberative process privilege consists of "draft portions of the Staff Report, inserts for the report, or edits or discussions of edits to report drafts," which FERC collectively refers to as "report drafts." (Miller Decl. ¶ 18.) Draft documents are neither *per se* exempt from disclosure under FOIA nor presumptively privileged. *Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F.Supp.2d 252, 261 (D.D.C.2004) (citing *Arthur Andersen and Co. v. IRS,* 679 F.2d 254, 257 (D.C.Cir.1982)). However, an agency may withhold a draft document if there is a danger of "chilling" communication within the agency. *Dudman Communications Corp. v. Dep't of the Air Force,* 815 F.2d 1565, 1569 (D.C.Cir.1987). As the Court stated in *Dudman:*

> [D]isclosure of editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis—would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work.... [A]n author would hesitate to advance unorthodox approaches if he knew that the [agency's] rejection of an approach could become public knowledge.... [E]ditors would place pressure on authors to write drafts that carefully to the party line.

*Id.* An agency need not demonstrate the extent to which the draft differs from the final document because such a showing would "expose what occurred in the deliberative process between the draft's creation and the final document's issuance." *Exxon Corp. v. Dep't of Energy,* 585 F.Supp. 690, 698 (D.D.C.1983).

 FERC argues that the drafts are protected by the deliberative process privilege because "[t]hey reflect FERC staff's thoughts during the process of determining whether alleged market abuses caused the California energy crisis." (Def.'s Mot. at 16). FERC asserts that release of these drafts would harm the agency's "ability to undertake efforts such as the Staff Report" in the future because "[t]he knowledge that report drafts would be subject to release would significantly inhibit staff from committing candid views to paper and could lead to confusion about FERC positions, and misinterpretation of its decisions, due to the temptation to compare final issuances or reports to earlier drafts." (Miller Decl. ¶ 19.) Reliant argues that the deliberative process privilege does not apply to the report drafts because the creation of the Staff Report involved a factual investigation rather than a policy formulation. (Pl.'s Mot. at 14). The undersigned agrees with FERC that the draft reports are protected by Exemption 5. Release of these documents would allow a reader to probe too deeply into the thought processes of the drafters and would have a chilling effect on communication between agency employees regarding similar projects and the future.

 The second category of documents that FERC withheld pursuant to the deliberative process privilege are "e-mail exchanges, memoranda, discussion papers or other documents containing substantive

discussions of the issues under investigation," which FERC collectively refers to as "internal discussions." (Miller Decl. ¶ 22.) Courts have found that documents containing opinions and recommendations of agency staff members are protected by Exemption 5 because they reveal the agency's deliberative process. *See, e.g., Porter County Chapter of the Izaak Walton League of Am. v. Atomic Energy Comm'n,* 380 F.Supp. 630, 637 (N.D.Ind.1974). In *Porter,* the Court reasoned:

> In conducting a thorough review, it is essential that Staff members be able freely to communicate with each other. Disclosure of internal communications such as were here deleted can hamper the candid exchange of views and the ultimate policy-making process. Such opinions and recommendations would not be available by discovery in ordinary litigation.

*Id.* at 634–35. Accordingly, the Court found that passages containing the opinions or recommendations of individual staff members "were all part of the agency's deliberative, policy-making, and decisional processes." *Id.* at 634.

FERC argues that the internal discussions are deliberative because "[m]uch of the discussion in these documents centered around questions such as how best to examine the available data and whether the data were sufficient for the investigators' needs." (Miller Decl. ¶ 22.) FERC withheld these documents because their release would inhibit deliberations among agency staff members. (Def.'s Mot. at 18.) As in the case of the report drafts, Reliant argues that these communications are not deliberative because they arose in the context of a factual investigation. (Pl.'s Mot. at 14.) The undersigned conducted a careful *in camera* review of these documents to determine whether each one was part of the deliberative process that culminated in

the publication of the Staff Report. Based on this review and the statements in the Miller Declaration, the undersigned concludes that these documents were properly withheld. The internal discussions contain opinions, recommendations, suggestions and strategies pertaining to the creation of the Staff Report and their disclosure could hamper future communications between agency employees.

▮ The third category of documents that FERC withheld pursuant to the deliberative process privilege are spreadsheets and tables [ ] that "analyze raw data that reflect natural gas and electric trends," which FERC collectively refers to as "data analysis." (Miller Decl. ¶ 29.) FOIA does not allow "[p]urely factual reports and scientific studies [to be] cloaked in secrecy by an exemption designed to protect only 'those internal working papers in which opinions are expressed and policies formulated or recommended.'" *Bristol–Myers Co. v. Fed. Trade Comm'n,* 424 F.2d 935, 939 (D.C.Cir.1970) (quoting *Ackerly v. Ley,* 420 F.2d 1336, 1341 (D.C.Cir.1969)). However, the D.C. Circuit distinguishes between "raw facts with informational value in their own rights" and facts that "serve primarily to reveal the 'evaluative' process by which different members of the decisionmaking chain arrive at their conclusions and what those predecisional conclusions are." *Mead Data Cent., Inc. v. Dep't of the Air Force,* 575 F.2d 932, 935 (D.C.Cir.1978). In *Mead Data,* the Court held that cost comparisons were deliberative because they were directed at a particular decision. Similarly, the Court in *Brannum v. Dominguez,* 377 F.Supp.2d 75, 83 (D.D.C.2005), held that factual vote sheets were protected under Exemption 5 because they were used by agency personnel in developing recommendations to an agency decisionmaker.

FERC admits that the data contained in these withheld documents is not deliberative, but contends that the deliberative process privilege applies because of "the manner in which staff analyzed" the data. (Miller Decl. ¶ 30.) Specifically, FERC asserts:

> The investigators have to make decisions about how to look at the data, how to select portions of the data to examine, and how to interpret the data. These included matters such as what types of transactions to examine (such as long-term or short-term), what time periods, which companies' transactions, which sizes of transactions, how to follow a series of transactions (which might show a company buying in one market and quickly selling in another market). The parameters used in these spreadsheets and tables were exercises of judgment on the part of the investigators.

(*Id.*) Again, Reliant argues that the data analysis documents are factual, rather than deliberative, and accordingly not protected by Exemption 5. The undersigned agrees with FERC that while these documents are not themselves deliberative, their use by agency employees in writing the Staff Report renders them part of the deliberative process. Therefore these spreadsheets and tables are protected by Exemption 5.

### b. *Attorney–Client Privilege*

■ The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data,* 566 F.2d at 252. The privilege applies to disclosures made by a client to an attorney as well as an attorney's written communications to a client. *Coastal States,* 617 F.2d at 862. This Circuit has stated that "it is clear that an agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege." *Id.* at 863. The purpose of the attorney-client privilege is to encourage a client to be open and honest with his attorney by ensuring that a client's confidences to his attorney will be protected. *Id.* at 862. However, the privilege must be "narrowly construed and is limited to those situations in which its purposes will be served." *Id.*

FERC asserts that it withheld seven documents solely on the basis of the attorney-client privilege.[11] (Miller Decl. ¶ 33.) In describing the withheld documents, FERC states: "Two of the seven contain advice from a staff attorney with respect to the handing of a FOIA request other than the one that is the subject of this case. Five involve legal advice, or requests for legal advice, with respect to procedural matters involved in the investigation." (*Id.*) FERC further asserts that each document was "created with the expectation of confidentiality." (*Id.*) Reliant specifically addresses the application of the attorney-client privilege to the report drafts, internal communications, and data analysis materials, arguing that they are not privileged merely because they "were circulated to attorneys to allow them to evaluate the proposed findings and analysis for legal sufficiency." (Pl.'s Mot. at 12–13.) Therefore Reliant asserts that FERC

---

11. FERC also asserted the attorney-client privilege as a basis for withholding fifty-two of the report drafts, ninety-eight of the internal discussion documents, and six of the data analysis documents. (Miller Decl. ¶¶ 20, 24, 31.) Because the undersigned found that all of these documents were properly withheld under the deliberative process privilege, this Report and Recommendation need not address whether they were also properly withheld under the attorney-client privilege.

has not met its burden of establishing that these documents are privileged.[12]

The documents for which FERC invokes the attorney-client privilege as the sole basis for disclosure were not merely circulated to attorneys. Rather, they involve requests for and the provision of legal advice in the context of an attorney-client relationship. Even construing the privilege narrowly, the undersigned concludes, based on an *in camera* review of these documents and the Miller Declaration, that FERC has sustained its burden of proving that the withheld documents contain confidential attorney-client communications.

### 3. *Exemption 6—Protection of Personal Privacy*

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would clearly constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has held that Congress intended the words "similar files" to be interpreted broadly. *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599–603, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). If the threshold requirement of "personnel and medical files and similar files" is met, "the court must undertake a balancing of the public interest in disclosure on the one side and the individual's interest in privacy on the other." *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 862 (D.C.Cir.1981). If the requesting party cannot demonstrate a public interest in disclosure then the court will not order disclosure, because, as this Circuit has noted, "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed.*

*Employees v. Horner*, 879 F.2d 873, 879 (D.C.Cir.1989).

In this case, FERC invoked Exemption 6 to justify its partial withholding of nine documents. Specifically, the agency redacted "a long list of e-mail addresses of persons not directly involved in the PA02–2 proceeding," "personal phone numbers," and "personal information about a FERC employee that was not germane in any way to the Staff Report." (Miller Decl. ¶ 34.) FERC argues that "[a]ll of the withheld information was personal and of a completely trivial nature to anybody other than the subject of the information." (Def.'s Mot. at 23.) Reliant has failed to assert a public interest in disclosure of the redacted information, focusing instead on the issues of waiver and segregability. (*See* Pl's Mot. at 20.) The undersigned finds that the types of information redacted by FERC meet the threshold requirement and that there is no public interest in disclosure that outweighs the privacy interest in non-disclosure. Therefore the undersigned concludes that FERC properly withheld parts of responsive documents under Exemption 6.

### B. *Disclosure of Reasonably Segregable, Nonexempt Material*

In discharging its duties under FOIA, an agency must disclose "[a]ny reasonably segregable portion of a record ... after deletion of the portions which are exempt...." 5 U.S.C. § 552(b). FOIA's focus is on disclosure of "information, not documents;" therefore "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data*, 566 F.2d at 260. However, non-exempt portions of

---

12. Reliant also argues that FERC waived the attorney-client privilege by not invoking it in its earlier Motion for Summary Judgment. (Pl.'s Mot. at 11.) For the reasons set forth in the undersigned's discussion of Exemption 4, the undersigned rejects this argument and concludes that this basis for withholding documents was not waived.

documents need not be disclosed if "they are inextricably intertwined with exempt portions." *Id.* The burden is on the agency to adequately demonstrate that all reasonably segregable, nonexempt material was disclosed. *Church of Scientology v. IRS,* 816 F.Supp. 1138, 1162 (W.D.Tex. 1993).

FERC contends that it has released all reasonably segregable, nonexempt material. (*See* Def.'s Opp'n at 12.) Of the 683 documents that the agency treated as responsive to Reliant's FOIA request, FERC determined 367 were subject to release in full, seventeen were exempt from release in part, and 299 were exempt from release in full. (Miller Decl. ¶ 16.) The agency subsequently released an additional 367 documents in full and seventeen in part. (*Id.*) FERC argues that the report drafts are not segregable because "[t]o the extent they contain historical facts or other non-deliberative materials, the material occurs solely in the midst of substantive discussions that are deliberative in nature." (*Id.* ¶ 21.) Reliant argues that FERC has failed to meet its burden with respect to segregability because the Miller Declaration merely contains conclusory statements regarding non-segregability. While the agency's affidavit may be deficient in this respect, the undersigned finds on the basis of its *in camera* review that FERC has satisfied its segregability obligations.

## IV. CONCLUSIONS

For the reasons stated above, the undersigned finds that FERC met its burden of proving (1) that the claimed exemptions protect the withheld documents, and (2) that the agency has disclosed all reasonably segregable, nonexempt portions of the materials requested by Reliant. Accordingly, the undersigned finds that there is no genuine issue of material fact for trial and recommends that the trial court grant FERC's Motion for Summary Judgment and deny Reliant's Motion for Summary Judgment.

## V. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. See *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). If this Report and Recommendation is served on the parties by mail, calculation of the time period for filing written objections is as follows: 10 business days (excluding weekends and holidays) plus three calendar days (including weekends and holidays). See *CNPq–Conselho Nacional de Desenvolvimento Cientifico e Technologico v. Inter–Trade, Inc.,* 50 F.3d 56, 58 (D.C.Cir.1995) (per curiam).

Oct. 5, 2007.