**Michael ADAMOWICZ & Elizabeth Fraser, as Executors of the Estate of Mary Adamowicz, Plaintiffs,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

No. 06 Civ. 3919(LAP).

United States District Court, S.D. New York.

March 31, 2008.

Frederick M. Sembler, Law Offices of Frederick M. Sembler, PLLC, New York, NY, for plaintiffs.

Lara K. Eshkenazi, U.S. Attorney's Office, SDNY, New York, NY, for defendant.

*MEMORANDUM AND ORDER*

LORETTA A. PRESKA, District Judge.

Acting as executors of the Estate of their mother Mary Adamowicz, Plaintiffs Michael Adamowicz and Elizabeth Fraser bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the production of documents withheld by Defendant the Internal Revenue Service ("IRS" or the "Government"). The parties cross-moved for partial summary judgment, and, for the reasons stated below, the Government's motion [dkt. no. 17] is GRANTED in part and DENIED in part, and Plaintiffs' motion [dkt. no. 12] is DENIED.

I. *BACKGROUND*

On or about May 29, 2003, Plaintiffs filed a United States Estate (and Generation–Skipping Transfer) Tax Return on Form 706 for the Estate of Mary Adamowicz. (Sembler Decl. ¶ 5.) That return was selected for examination by the IRS, and the corresponding audit was assigned to Estate Tax Attorney Susan Leboff. (Leboff Decl. ¶ 2.) During the course of that audit, the IRS denied an Internal Revenue Code ("I.R.C.") § 6166 election on the Estate's Form 706, and Plaintiff's subsequent internal administrative appeal of that decision (" § 6166 appeal") was denied. (Second Sembler Decl. ¶ 4; Glasel Decl. ¶ 4.)

In January 2005, Plaintiffs initiated a proceeding in the U.S. Tax Court further challenging the denial of the Estate's § 6166 election. (Second Sembler Decl. ¶ 18.) Among other things, Plaintiffs alleged that Leboff had engaged in prohibited *ex parte* communications with personnel handling the § 6166 appeal in the IRS Appeals Office. (Glasel Decl. ¶ 4.) Before trial of that matter was scheduled to begin, however, the IRS conceded that the Estate's § 6166 election was valid, and the matter was stricken from the Tax Court's calendar in July 2007. (Second Sembler Decl. ¶¶ 19–22.)

During both the audit and the subsequent Tax Court litigation, Donald Glasel, an attorney in the IRS Office of Chief Counsel, advised Leboff and her manager, Patrick Leahy. (*See generally* Glasel Decl.)

In March 2005, Plaintiffs filed a FOIA request seeking:

All records pertaining to the examination of the Form 706 filed in 2003 for the [Adamowicz] Estate, excluding (i) copies of the Form 706 itself . . ., and (ii) copies of correspondence and documents submitted by [Counsel for the Estate] to the Internal Revenue Service. . . .

(Sembler Decl., Ex. A (March 1C, 2005 FOIA Request Letter).) That request was received in the IRS's Manhattan Disclosure Office and assigned to Disclosure Specialist Alan Dichter for processing. (Dichter Decl. ¶ 3.) Dichter met with Leboff, Leahy and Glasel to review records that had been collected as responsive to Plaintiffs' request, (*id.* ¶¶ 7, 9), and ultimately produced 1046 pages in their entirety and 87 partially redacted pages, while withholding 1283 pages in their entirety (*id.*, Ex. B (June 10, 2005 Disclosure Letter)). The Disclosure Office cited FOIA Exemptions 3, 5 and 7(A) to justify its non-disclosures. (*Id.*)

Plaintiffs appealed the FOIA non-disclosures in a July 13, 2005, letter to IRS Appeals Office ("FOIA appeal"), arguing that the Government had failed to demonstrate applicability of the cited exemptions. (Sembler Decl., Ex. C (Plaintiffs' FOIA Appeal Letter).) They also argued that the Government's search was inadequate because it had failed to return any documents related to the § 6166 appeal. (*Id.*) After reviewing the documents produced and withheld by the Disclosure Office, (Field Decl. ¶¶ 6–7), the IRS Appeals Office denied Plaintiffs' FOIA appeal by letter dated August 30, 2005 (*id.* ¶¶ 8–10; *see also* Sembler Decl., Ex. D (IRS FOIA Appeal Denial Letter)). It concluded that documents related to the § 6166 appeal were not responsive to Plaintiffs' FOIA request and stated that such information would only be considered responsive to a request specifically for documents concerning the appeal. (Field Decl. ¶ 8.) The letter also concluded that the Government's decision to withhold documents was justified because they "contain information concerning other taxpayers and/or, if released, would hinder law enforcement purposes." (Sembler Decl., Ex. D.)

Plaintiffs then instituted this action by filing a complaint seeking release of the withheld responsive documents and reasonable attorneys' fees and expenses. Defendants filed an answer and agreed, in an August 21, 2006 letter, to provide a *Vaughn* Index detailing the withheld documents and the FOIA exemptions claimed therefor. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973); *see also* Sembler Decl., Ex. H (Government's August 21, 2006 Letter). Counsel produced an Index on November 14, 2006, (Eshkanazi Decl., Ex. A (First *Vaughn* Index Letter)), and, after further negotiations, provided a second, revised Index and documents with fewer redactions (*id.*, Ex. B (Second Vaughn Index Letter)).

Having exhausted their efforts to resolve this dispute amicably, the parties indicated their intent to proceed with summary judgment motions and, after a pre-motion conference, I approved a briefing schedule on the cross motions currently before the Court. (Sembler Decl., Ex. P (Briefing Schedule Order).) Of course, the parties have fully briefed the matter and have provided their supporting declarations and exhibits. In addition, the Government has submitted a third *Vaughn* Index prepared by Mary Ellen Keys, an attorney in the IRS Office of the Associate Chief Counsel, and a corresponding Keys Declaration further explaining the Final Revised *Vaughn* Index. (Keys Decl.; *id.*, Ex. A; Third *Vaughn* Index).[1]

---

1. Plaintiffs attack the validity of the Keys Declaration and ask the Court to disregard its

## II. DISCUSSION

### A. FOIA Summary Judgment Standards

Congress enacted FOIA "to promote honest and open government and to assure the existence of an informed citizenry to hold the governors accountable to the governed." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir.1999) (quotation omitted). FOIA's broad disclosure mandate consequently requires disclosure of documents unless they fall within one of the enumerated exemptions. *See, e.g., Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001). These exemptions embody Congress's recognition that not all information should be released to the public, *see Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 925 (D.C.Cir.2003), but "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act," *Klamath*, 532 U.S. at 7–8, 121 S.Ct. 1060. Thus, while courts are reminded to give the exemptions "meaningful reach and application," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989), the fundamental directive remains that they should be given "a narrow compass," *Klamath*, 532 U.S. at 8, 121 S.Ct. 1060; *see also Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir.1988) (exemptions are to be "narrowly construed with all doubts resolved in favor of disclosure").

■ Summary judgment is the preferred procedural vehicle for resolving FOIA disputes, and the attendant standards are well-defined in this Circuit:

> In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA. Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden. Affidavits submitted by an agency are "accorded a presumption of good faith," [and,] accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face. When this is the case, the district court may forgo discovery and award summary judgment on the basis of affidavits.

> In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate.

explanations for the Government's non-disclosures. (Pl's Reply 3–5.) Because Keys was assigned to this case well after the Government's initial disclosures, argue Plaintiffs, she lacks sufficient personal knowledge to ground the assertions in her declaration. (*Id.* at 4–5.) Plaintiffs' argument fails because they misunderstand the function of the Keys declaration: it is not offered to explain why prior disclosure officers made the decisions they made, (*id.* at 4), but rather to justify the non-disclosures in this case in the first instance (*see*

Keys Decl. ¶ 6–7 ("I have reviewed all documents at issue in this litigation and have determined that every reasonably segregable non-exempt portion of every responsive document has been made available to Plaintiffs."); *see also* Supp'l Keys Decl. ¶ 6). As such, all that is required is that Keys have personal knowledge of the documents themselves, which she indisputably has. *See, e.g., Williams v. F.B.I.*, No. 90 Civ. 2299, 1992 WL 495018, at *2 n. 1 (D.D.C. Apr.13, 1992) (citing cases).

*Carney v. Dep't of Justice,* 19 F.3d 807, 812 (2d Cir.1994) (citations and quotations omitted); *see also Jones–Edwards v. Appeal Bd. of Nat'l Sec. Agency,* 196 Fed. Appx. 36, 37 (2d Cir.2006).

■ On these cross summary judgment motions, the Government argues that its search was adequate and that the non-disclosures are justified under the following FOIA exemptions: Exemption 3, 5 U.S.C. § 552(b)(3), exempting documents "specifically exempted from disclosure by statute;" Exemption 5, 5 U.S.C. § 552(b)(5), exempting documents that would be subject to privilege in civil litigation;[2] and Exemption 7, 5 U.S.C. § 552(b)(7), exempting documents collected for law enforcement purposes that, *inter alia,* "could reasonably be expected to constitute an unwarranted invasion of personal privacy, [or] could reasonably be expected to disclose the identity of a confidential source." Plaintiffs contest each point.

I turn first to the adequacy of the Government's search.

### B. *Adequacy of the Search*

■ The Government must establish the adequacy of its search by showing "that the agency made a good faith effort to search for the requested documents, using methods 'reasonably calculated' to produce documents responsive to the FOIA re-quest." *Garcia v. U.S. Dep't of Justice,* 181 F.Supp.2d 356, 366 (S.D.N.Y.2002) (quoting *Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984)). This standard does not demand perfection, and thus failure to return all responsive documents is not necessarily inconsistent with reasonableness: an agency "is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents." *Garcia,* 181 F.Supp.2d at 368. As noted above, such reasonableness may be established solely on the basis of the Government's relatively detailed, non-conclusory affidavits that are submitted in good faith. *See Carney,* 19 F.3d at 812, *see also Safe-Card Services, Inc. v. S.E.C.,* 926 F.2d 1197, 1200 (D.C.Cir.1991) (quoting *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C.Cir.1981)).

■ In this case, the Government relies on the Dichter Declaration to establish the adequacy of its search. (Def's Reply 2.) According to that declaration, after being assigned Plaintiffs' FOIA request, Dichter began his search by performing an Integrated Data Retrieval System ("IDRS") search with the decedent's social security number. (Dichter Decl. ¶ 4.) He describes that system as the IRS's "primary resource for researching current taxpayer account information," which contains "in-

---

**2.** Plaintiffs argue that Defendants should be prevented from asserting attorney work-product privilege under 5 U.S.C. § 552(b) (5) in this proceeding because Defendant "not merely fail[ed] to raise this exemption at the administrative level, but also failed to claim this exemption in any of its prior submissions to the Court." (Pls' Reply 12.) Plaintiffs cite no support for that proposition, and research reveals contrary authority. *See, e.g., Stonehill v. I.R.S.,* 534 F.Supp.2d 1, 10 (D.D.C.2008) (finding no authority for proposition that party waives FOIA exemption by not raising it in first responsive pleading); *Ctr. for Public In-tegrity v. F.C.C.,* 505 F.Supp.2d 106, 113–14 (D.D.C.2007) (same). Instead, while "an agency may waive the right to raise certain exemptions if it fails to raise them prior to the district court ruling in favor of the other party," *Judicial Watch v. Dep't of the Army,* 466 F.Supp.2d 112, 123–24 (D.D.C.2006), the failure to raise an exemption prior to an adverse determination does not give rise to waiver, *see Reliant Energy Power Generation, Inc. v. F.E.R.C,* 520 F.Supp.2d 194, 201–02 (D.D.C. 2007) (prior denial of summary judgment motion does not preclude raising new exemption in subsequent summary judgment motion).

formation pertaining to returns filed by taxpayers and information submitted with respect to taxpayers by third parties." (*Id.* ¶ 4 n. 1.) The IDRS search revealed that the IRS's Estate and Gift Tax Group 1529 (Specialty Programs, Estate & Gift Tax Program, Territory—Northeast, Group 4) was conducting the examination of the Estate's Form 706. (*Id.* ¶ 5.) Dichter then contacted Leahy, the manager of that unit, who told Dichter that Leboff was the agent handling the examination and who directed "Leboff and other persons responsible for handling the examination ... to compile those records responsive to Plaintiffs' FOIA request." (*Id.* ¶ 7.) Those individuals provided Dichter with a body of records, and he later "confirmed with Attorneys Leahy, Leboff and Glasel that the records represented the entirety of the records responsive to Plaintiffs' FOIA request." (*Id.* ¶ 9.)

I conclude that the Dichter Declaration is sufficiently specific and that the search it describes was reasonably calculated to return all the documents responsive to Plaintiffs' FOIA request. Plaintiffs' main argument to the contrary seems to be that the search should have included documents pertaining to the § 6166 appeal. (Pl's Reply 23–24.) According to Plaintiffs, the

Government's assertion that such documents were not responsive to their request "is preposterous, and represents exactly the sort of governmental obfuscation that FOIA was intended to avoid." (*Id.* at 23.) I disagree. Plaintiffs asked for all documents pertaining to the *examination,* and that is precisely what they got. If they wanted documents pertaining to the *appeal,* they could have requested them very easily. Indeed, Plaintiffs knew as early as the summer of 2005 that documents related to the § 6166 appeal would not be included in their search—they should have submitted another request to IRS at that time. (Sembler Decl., Ex. A.) Instead, Plaintiffs ask this Court to require the Government to respond to a search that is broader than the one it received. Finding no authority requiring that result and thinking it unwise, I decline to adopt it.[3]

### C. *Exemption 5: Documents Subject to Privilege*

Under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), the Government may withhold from disclosure any "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[4] This includes the so-called "de-

---

**3.** Plaintiffs also argue that Dichter's search was inadequate because he did not personally supervise the IRS employees who performed the search. (Pls' Reply 21–22.) Defendants rightly argue, however, that declarations from Government employees who supervised the search, like Dichter, are sufficient and that the Government need not produce "affidavits from each individual who participated in the actual search." *Carney,* 19 F.3d at 813–14; *see also Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.,* No. 98 Civ. 4608, 1998 WL 690371, at **3–4 (S.D.N.Y. Sept. 30, 1998) (calling use of such affidavits "routine").

**4.** I reject each of Plaintiffs' three arguments that the Government is altogether barred

from invoking the privilege-based FOIA exemptions. First, Plaintiffs cite no authority for the broad proposition that withholding a non-privileged document under a privilege-based FOIA exemption forecloses the Government's opportunity to claim such exemptions with respect to other documents. (Pls' Mem. 11.) Second, Plaintiffs assertion that the Government may not invoke the privilege-based FOIA exemptions to withhold illegal, *ex parte* communications fails because Plaintiffs do not identify which, if any, *ex parte* communications were improperly withheld by the Government. (Pls' Mem. 12; Pls' Reply 12–13.) Their argument appears to be that if some of the documents withheld were *ex parte* communications, then withholding those documents *would not* have been appropriate.

liberative process" privilege, as well as the attorney-client and the attorney work-product privileges, *see N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), each of which the Government has invoked in this case, (Keys Decl. ¶¶ 13–21).

██ Before examining each specific invocation, however, I pause to note my authority to "grant summary judgment in favor of an agency on the basis of agency affidavits [alone] if they contain *reasonable specificity* of detail rather than merely conclusory statements." *Grand Cent. P'ship*, 166 F.3d at 478 (quotation omitted) (emphasis in original). While I am aware of no definitive statement of what constitutes "reasonable specificity," the declarations must, at the very least, establish a logical connection between the information withheld and the exemption claimed. *See, e.g., American–Arab Anti–Discrimination Comm. v. Dep't of Homeland Sec.*, 516 F.Supp.2d 83, 86 (D.D.C.2007); *Berger v. I.R.S.*, 487 F.Supp.2d 482, 492–92 (D.N.J. 2007); *Amro v. U.S. Customs Service*, 128 F.Supp.2d 776, 782 (E.D.Pa.2001). Perhaps more helpful is the explanation for specificity offered by the Court of Appeals for the District of Columbia:

> [I]t forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Judicial Watch v. F.D.A.*, 449 F.3d 141, 146 (D.C.Cir.2006) (quoting *Keys v. Dep't of Justice*, 830 F.2d 337, 349 (D.C.Cir. 1987)). Once the adequacy of the Government's affidavits is established, they benefit from a presumption of good faith, which "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Grand Cent. P'ship*, 166 F.3d at 489 (quotations omitted).

With this principle in mind and for the reasons stated below, I conclude that the Government's affidavits with respect to its invocation of the deliberative process and attorney/client privileges, *see* 5 U.S.C. § 552(b)(5), lack the requisite specificity to support summary judgment justifying those non-disclosures. I conclude, however, that the Government's invocation of the work product privilege was appropriate.

**1. *Deliberative Process Privilege***

██ To qualify for the deliberative process privilege under Exemption 5, "a document must be both 'predecisional' and 'deliberative.'" *Grand Cent. P'ship*, 166 F.3d at 482 (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975)). To be "predecisional," the document must be "prepared in order to assist an agency decisionmaker in arriving at his decision," *Hopkins v. Dep't of Housing and Urban Dev.*, 929 F.2d 81, 84 (2d Cir.

That may be true, but I cannot order the production of hypothetical documents. Finally, Plaintiffs' argument that communications between Leboff and Glasel are not privileged it they were *on the subject* of the alleged *ex parte* communications finds no support in the cases cited by Plaintiffs. *See United States v. Tellier*, 255 F.2d 441, 447–48 (2d Cir.1958) (attorney/client privilege did not apply to communications that were not expected to remain confidential); *Smith v. Alyeska Pipeline Service Co.*, 538 F.Supp. 977, 979–82 (D.C.Del.1982) (attorney/client privilege could not be invoked with respect to letters between attorney and his client where attorney sent copy of one such letter to his client's adversary); *see also* Pls' Mem. 12. Finding no support for it either, I reject this argument too.

1991), and the Government must " 'pinpoint the specific agency decision to which the document correlates' and 'verify that the document precedes, in temporal sequence, the "decision" to which it relates,' " *Grand Cent. P'ship*, 166 F.3d at 482 (quoting *Providence Journal Co. v. Dep't of the Army*, 981 F.2d 552, 557 (1st Cir.1992)). A document is "deliberative" when it is " 'actually ... related to the process by which policies are formulated.' " *Id.* (quoting *Hopkins*, 929 F.2d at 84). Further, a document does not qualify for the privilege if it reflects only the policy of the agency, rather than "the personal opinions of the writer," or is "merely peripheral to actual policy formation." *Id.* (quoting and citing *Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1248 (4th Cir.1994)). Additionally, purely factual matters are not within the ambit of the privilege. *See Hopkins*, 929 F.2d at 84.

 In this case, the documents withheld or redacted under the deliberative process privilege consist of "notes and analysis of [Leboff] (some of which is handwritten) contained on various documents maintained" in the Form 706 Examination file that Leboff created while "performing her function as an auditor" of the Form 706. (Keys Decl. ¶ 14.) The withheld information falls into two categories. The first consist of "notes ... found on various types of documents maintained in the Examination file including an 'activity record,' charts of real estate interests of Mary Adams,[footnote omitted] deed analyses, property valuations and responses to 'IDRs.' " (*Id.*) The second consists of "notes taken during [Leboff's] visits to representatives of the estate, draft questions to posit to representatives of the estate, and [Leboff's] general notes con-

tained in the Adamowicz file." (*Id.* ¶ 15.)[5] In addition, Leboff declares that "[a]ll the information withheld pursuant to the deliberative process privilege ... reflect my subjective beliefs about the information gathered during the Examination and not the policy of the IRS." (Leboff Decl. ¶ 7.) The *Vaughn* Index itself offers several permutations of the statement that the document withheld "is suggestive of strategy and mental impression." (*See* generally Keys Decl., Ex. A.)

I conclude that the Government's affidavits are not sufficiently detailed to allow me to decide whether the privilege applies to the withheld documents. For instance, from the information at hand, I cannot determine whether any given note describes non-privileged "factual matter" or the degree to which any given note is "merely peripherally" related to policy formation. Indeed, the Government's offering with respect to the first category of withheld documents reveals nothing at all about the information withheld but instead only discusses the documents on which those notes are located. The boilerplate language found in the *Vaughn* Index is only marginally more helpful but nevertheless falls short of discharging the Government's burden of producing reasonably specific affidavits.

### 2. *Attorney–Client and Work Product Privileges*

 "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services.... In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C.Cir.1997).

---

**5.** Specifically, the Government withheld Documents Bates Stamped 1 (entries 11, 19 and 23), 2 (entries 28–29 and 34), 3 (entries 37–40 and 50–51), 6–8, 12–15, 19–32, 34–57, 68–84, 87, 90–99, 148–162 and 169. (Keys Decl. ¶¶ 14–15.)

One line of cases, invoked here by Plaintiffs, holds that certain types of legal advice are nevertheless not within the FOIA attorney/client privilege. *See id.* at 619; *see also Schlefer v. United States,* 702 F.2d 233 (D.C.Cir.1983); *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). Those cases distinguish certain documents issued by the IRS Office of Chief Counsel, called Field Service Advice Memoranda ("FSAs"), as unqualified for attorney/client privilege because, as opposed to other types of legal advice, FSAs "create a body of private law, applied routinely as the government's legal position in its dealings with taxpayers." *Tax Analysts,* 117 F.3d at 619.

■ On the other hand, "[t]he attorney work product privilege protects 'the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways' prepared in anticipation of litigation." *A. Michael's Piano, Inc. v. F.T.C.,* 18 F.3d 138, 146 (2d Cir.1994) (quoting *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Thus, to justify non-disclosure under this exemption, the Government must show that the material "(1) [is] a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *ECDC Envt'l v. New York Marine & Gen. Ins. Co.,* No. 96 Civ. 6033, 1998 WL 614478, at *11 (S.D.N.Y. June 4, 1998).

The Government invokes the attorney/client privilege with respect to two sets of documents: (i) "Leboff's notes and e-mail correspondences reflecting advice she received from [Glasel] and counsel in the IRS' National Office, throughout the course of the Examination," (Keys Decl. ¶ 18),[6] and (ii) "e-mail correspondence between [Leboff] and Glasel discussing the ongoing Examination and litigation in Tax Court involving the Estate of Mary Adamowicz including facts and strategy," (*Id.* ¶ 19).[7] It invokes the work product privilege to withhold electronic correspondence between Leboff and Glasel, which includes e-mail correspondence between Glasel and other IRS attorneys, "discussing facts, strategy, mental impressions and personal beliefs regarding the ongoing Tax Court litigation involving the Estate of Mary Adamowicz." (Keys Decl. ¶ 20.)[8]

Plaintiffs argue essentially that the information in the Keys Declaration, together with the descriptions included in the *Vaughn* Index, generally does not provide sufficient detail to determine the applicability of either exemption. Specifically with respect to the attorney/client privilege, Plaintiffs argue that the Government's submissions do not provide enough detail to determine that the communications in question are not encompassed by the *Tax Analysts* line of cases. (Pls' Mem. 8–10.)

In addition to the material from the Keys Declaration quoted above, the Government offers the following from the Leboff and Glasel Declarations to support its invocations:

---

**6.** Specifically, the Government withheld Document Bates Stamped 1 (entries 20, 23), 2 (entries 24–25, 27, 33–35), 3 (entries 37, 39, 44), 4 (entries 64–65), 5 (entries 74, 85), 104–06, 108–10, 122–26 and 140–47.

**7.** Specifically, the Government withheld Document Bates Stamped 100–03, 105–20, 127–38 and 140–47.

**8.** Specifically, the Government withheld Documents Bates Stamped 100–03, 105–20, 127–32, 136–38 and 140–47.

Throughout the Examination I [Glasel] have provided, and continue to provide, legal advice to Susan Leboff [ ], the IRS Estate Tax Attorney assigned to conduct the Examination, and her manager, Patrick Leahy[ ]. (Glasel Decl. ¶ 3.)

I [Glasel] have reviewed all of the documents withheld by the IRS pursuant to the attorney-client privilege and the attorney work-product privilege relating to communications between myself, Leboff and Leahy. (*Id.* ¶ 6.)

Throughout the Examination I [Leboff] have consulted, and continue to consult, with IRS Area Counsel Donal Glasel and counsel in the IRS's National Office. (Leboff Decl. ¶ 3.)

All of the information withheld pursuant to the attorney-client privilege contain or reflect confidential communications among myself [Leboff], [Glasel], and my manager, Patrick Leahy, or myself and counsel in IRS's National Office. These communications were all made with the expectation of privacy. (*Id.* ¶ 7.)

[A]ll the documents withheld in part pursuant to the attorney work-product doctrine were prepared in preparation for the Tax Court litigation by either myself or other attorneys within the IRS, and contain mental impressions and discussions of strategy related to that case. (Glasel Decl. ¶ 9.)

The Government's supplemental declarations add nothing to this information; nor does the *Vaughn* Index add information of any substance.

■ With respect to the work product privilege, the statement from the Glasel Declaration, accorded the presumption of good faith, *see Grand Cent. P'ship*, 166 F.3d at 489, is sufficient to establish a logical connection between the information withheld and the exemption claimed, *see American–Arab Anti–Discrimination Comm.*, 516 F.Supp.2d at 86. I thus con-

clude that the Government properly withheld material pursuant to that privilege.

■ With respect to attorney/client communications, however, although both Leboff and Glasel state that they had attorney-client communications, through oversight or otherwise, neither actually states that the material withheld constitutes or reflects such communications or that the substance of those communications do not constitute FSAs within the meaning of *Tax Analysts.* Therefore, I conclude that the Government has not met its burden of showing that the attorney/client privilege applies to any of the documents ever which it is claimed.

### D. *Exemption 3: Documents Specifically Exempted by Statute*

■ Exemption 3 authorizes the Government to withhold any document "specifically exempted, from disclosure by statute." 5 U.S.C. § 552(b)(3). To properly withhold documents under this exemption, the Government must establish both that the statute invoked qualifies under Exemption 3 and that the documents withheld qualify for nondisclosure under that statute. *See C.I.A. v. Sims,* 471 U.S. 159, 167, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985).

■ In this case, the Government relies on I.R.C. § 6103, 26 U.S.C. § 6103; *see also* Keys Decl. ¶ 9, which qualifies as an Exemption 3 statute, *see, e.g., Church of Scientology of Cal. v. I.R.S.,* 484 U.S. 9, 11, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987). It generally prohibits disclosure of "return information," *see* 26 U.S.C. § 6103(a), defined as:

A taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the

taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title . . . .

26 U.S.C. § 6103(b)(2)(A).

The Government has withheld 17 documents in part and 1015 documents in full, disclosure of which it asserts would reveal various third-party taxpayer "return information," such as the names, social security numbers, addresses, account number information and filing information. (Keys Decl. ¶ 10.)[9] Concluding as I do that the Government's affidavits in this regard are as specific as could reasonably be expected, Plaintiffs are left to ore argument: the withheld information does not qualify as "return information" because there is no allegation that it was collected "with respect to a return" of the relevant third-parties. (Pls' Reply 19–20.) This is an open question in this and other Circuits. *See Landmark Legal Foundation v. I.R.S.,* 267 F.3d 1132, 1135 (D.C.Cir.2001) (declining to resolve this statutory ambiguity). Confronting it inescapably here, I decline to adopt Plaintiffs' interpretation because it finds no support in the text of the provision, its context or the decisions of any court.

Quoted above, § 6103(b)(2)(A) defines two distinct sets of information covered by § 6103(a)'s general prohibition on disclosure. The first clause outlines certain specific types information particular to each individual taxpayer. The second clause defines a far broader set of information protected under § 6103(a)'s disclosure prohibition: "any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary." That second clause, broad as it may be, is followed by language of limitation—"with respect to a return."

■ Plaintiff argues that that limiting language applies equally to both the "taxpayer information" and "any other data" clauses. The more plausible interpretation, however, is one that reads the limiting language to apply only to the "any other data" clause. As a matter of construction, this conforms with the doctrine *reddendo singula singulis:* each must be put in each separate place. *See Black's Law Dictionary* 1686 (7th ed.1999); *see also United States v. Simms,* 5 U.S. (1 Cranch) 252, 2 L.Ed. 98 (1803). Under that settled principle of statutory construction, " 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.' " *United States v. Kerley,* 416 F.3d 176, 180 (2d Cir.2005) (quoting *Barnhart v. Thomas,* 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)); *see also* 2A Norma J. Singer, *Sutherland Statutes & Statutory Construction* § 47:26 (7th ed.2007). This approach is successful not merely as a matter of grammar, but also as a matter of internal logic: the set of

9. Specifically, the Government withheld: Document Bates Stamped 3 (entry 37), in part, because it included identity information of a third-party tax payer; Document Bates Stamped 58, a Westlaw document entitled "New York Times Abstracts," because it included a handwritten notation of the social security number of a third-party taxpayer; Documents Bates Stamped 148–162, a series of IDRS search results, in part, because disclosure would reveal the name, address and account number information of third-party taxpayers; ar.d Documents Bates Stamped 252–1356, more IDRS search returns, because they consist entirely of the name, address, social security number and filing information of third-party taxpayers. (Keys Decl. ¶ 12.)

information defined in the first clause is specific and in no need of further restriction, whereas the set of information defined in the second clause more appropriately lends itself to such restriction.

To the extent that analysis beyond the statutory language is necessary and appropriate, the construction I adopt also conforms with the general concern that led to the creation of § 6103 with the passage of the Tax Reform Act of 1976 ("TRA"), Pub.L. No. 94–455, 90 Stat 1520 (Oct. 4, 1976). As the Supreme Court has described, by the enactment of § 6103, Congress sought "to impose greater restrictions on the disclosure of tax data." *Church of Scientology of Cal.*, 484 U.S. at 17, 108 S.Ct. 271. Indeed, the Senate Finance Committee's report accompanying the TRA noted how "[i]t has been stated that the IRS probably has more information about more people than any other agency in this country," *see* S.Rep. No. 94–938, Pt. I, 316 (1976), 1976 U.S.Code Cong. & Admin. News 3438, 3746, and expressed its conviction "that returns and return information should generally be treated as confidential and not subject to disclosure except in those limited situations delineated in the newly amended section 6103 . . . ." *See id.* at 318, 1976 U.S.Code Cong. & Admin. News at 3747.[10] Thus, applying the limiting language in § 6103(b)(2)(A) to modify only the last antecedent clause preserves the full range of information captured by the first clause in accordance with the statute's purpose of protecting tax information.

If there were any doubt remaining as to the proper application of § 6103(b)(2)(A), however, the Finance Committee's explanation of that definition stands as the strongest indication of intent:

> The term 'return information' is to include the following data pertaining to a taxpayer: his identity, the nature, source or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, over-assessments and tax payments. It also includes any particular of any data received by, recorded by, prepared by, furnished to, or collected by the IRS with respect to a return filed by the taxpayer or with respect to the determination of the existence, or possible existence, of liability (including the amount of liability) for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense provided for under the code.

*See id.* at 318, 1976 U.S.Code Cong. & Admin. News at 3438. This leaves no ambiguity as to Congress' intent: the specifically identified information, if in the hands of the IRS at all, is categorically sheltered from disclosure, regardless of whether it was collected "with respect to a return." *See Landmark Legal Foundation*, 267 F.3d at 1135. For that reason, the Government's failure to so allege is of

---

**10.** The version of the TRA that passed the House did not include the provision on disclosure of "return information;" rather, it was added in the version reported to the Senate floor by the Senate Finance Committee. *See* House Conf. Rep. No. 94–1515, 482 (1976), 1976 U.S.Code Cong. & Admin. News 4117, 4186. The version reported out of conference adopted the Senate provision with only minor modifications, none of which are applicable here. *See id.* at 482–83, 1976 U.S.Code Cong. & Admin. News at 4186–87.

Additionally, Senate Finance Committee staff prepared two reports: a first and more extensive report, quoted herein, that accompanied the bill as reported to the floor by the Committee with its initial amendments; and a second, supplemental report that included additional amendments agreed to by the Committee subsequent to reporting the measure. *See* S.Rep. No. 94–938, Pt. II, 3 (1976), 1976 U.S.Code Cong. & Admin. News 4029, 4030. The supplemental report includes no language applicable here.

no consequence. Finding that the information withheld by the Government data pertains to the "taxpayer's identity" within the meaning of § 6103(b)(2)(A), I conclude that the Government properly withheld that information under Exemption 3 as information specifically exempted from disclosure by statute.

### E. *Exemption 7: Documents Exempted for Law Enforcement Purposes*

Under Exemption 7(C), the Government may withhold "records or information" that are "compiled for law enforcement purposes,"[11] and that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7) (C), or that "could reasonably be expected to disclose the identity of a confidential source," *id.* § 552(b)(7)(D).

#### 1. *Documents Constituting an Invasion of Privacy*

■ To determine whether the documents in question "could reasonably be expected to constitute an unwarranted invasion of personal privacy," courts must balance the individual's privacy interest against the public's interest in disclosure. *See Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 762–763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *see also Ferguson v. F.B.I.,* 957 F.2d 1059, 1069 (2d Cir.1992). In this context, the public's interest consists solely of the FOIA aim "to open agency action to the light of public scrutiny." *McErlean v. Dep't of Justice,* 97 Civ. 7831, 1999 WL 791680, at *9 (S.D.N.Y. Sept.30, 1999) (quoting *Reporters Comm.,* 489 U.S. at 771, 109 S.Ct. 1468). Thus, "[i]f release of the documents in question would not further the goal of opening agency action to public scrutiny, no public interest is implicated and disclosure is not mandated." *Id.; see also Davis v. Dep't of Justice,* 968 F.2d 1276, 1282 (D.C.Cir.1992) ("[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.' ").

In this case, the Government redacted certain documents compiled during examination of the Estate's Form 706 that contained the personal information of IRS personnel and other third-parties. (*See* Keys Decl. ¶¶ 23–24.)[12] Plaintiffs respond principally that disclosure of this material is necessary to aid the public's oversight function. (Pls' Reply 17.) Specifically, they allege that IRS personnel engaged in inappropriate *ex parte* communications during the § 6166 appeal and that the IRS uses audits like the one in this case inappropriately to review information unconnected to the audit. (*Id.*) Thus, knowing the identities of IRS personnel and third-parties involved in the Form 706 Examination is necessary to shed light on the Government's inappropriate conduct. (*Id.*)

---

11. Documents compiled to enforce the tax laws are "compiled for law enforcement purposes." Though the parties cite no cases from this Circuit so holding, (*see, e.g.,* Def's Mem. 19), other circuits have reached that conclusion, *see, e.g., Tax Analysts v. I.R.S.,* 294 F.3d 71, 77 (D.C.Cir.2002); *Williams v. I.R.S.,* 479 F.2d 317, 318 (3d Cir.1973) (applying Exception 7(C) to "data compiled in connection with an audit of an individual's tax liability"), and Plaintiffs do not contest the issue.

12. Specifically, the Government partially redacted Document Bates Stamped 54 to withhold personal information of IRS personnel or third parties, and partially redacted Documents Bates Stamped 59, 62–64, 67 and 85 to withhold the results of electronic searches that returned personal information of unrelated third parties. (Keys Decl. ¶ 24.) I conclude that the declarations in this regard are as specific in this regard as could reasonably be expected.

▮ Both of these arguments fail because the interests invoked by Plaintiffs are too speculative to overcome the well-recognized, weighty privacy interests of IRS personnel and third-parties. *See, e.g., McErlean,* 97 Civ. 7831, 1999 WL 791680 at *9 ("It is well-settled that the privacy interests of witnesses and investigative agents identified in agency documents are given heavy weight.") (citing *Reporters Comm.,* 489 U.S. at 766, 109 S.Ct. 1468). With respect to the third-party identities, Plaintiffs offer nothing beyond their own unsupported allegations of improper use of taxpayer information. (*See* Second Sembler Decl. ¶ 14.) Indeed, the nature of the documents themselves suggests no inappropriate investigation but rather cursory " 'miss-hits' of unrelated third parties that resulted from electronic database searches." (Keys Decl. ¶ 24.) Such a speculative public interest is not sufficient to overcome the real privacy interests of individual taxpayers. To support their interest in disclosure of the names of IRS personnel, Plaintiffs offer one such allegedly *ex parte* communication obtained by them. (Pls' Reply 17–18.) Because there was one such document, they argue, there must be others. As noted above, however, the universe of documents relating to the § 6166 appeal is separate and distinct from the documents initially produced. This reduces Plaintiffs' argument to speculation, and, consequently, does not outweigh the particularly strong privacy interests of law enforcement personnel. *See, e.g., O'Keefe v. Dep't of Def.,* 463 F.Supp.2d 317, 324 (E.D.N.Y.2006) ("Government employees, and specifically law enforcement personnel, have a significant privacy interest in their identities").

Therefore, I conclude that the redaction of documents pursuant to Exemption 7(C) was appropriate.

### 2. *Documents Revealing a Confidential Source*

▮ Under Exemption 7(C), the Government may withhold "records or information" that are (1) "compiled for law enforcement purposes" that (2) "could reasonably be expected to disclose the identity of a confidential source . . . ." 5 U.S.C. § 552(b)(7)(D). To invoke this exemption, the Government must show, not that the document withheld is confidential, but rather that the person who provided the information did so "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Dep't of Justice v. Landano,* 508 U.S. 165, 172, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). "Where an agency relies on an express assurance of confidentiality . . . it must offer probative evidence that the source did in fact receive an express grant of confidentiality [ ], such as . . . an official's personal knowledge about the source . . . ." *Dipietro,* 357 F.Supp.2d at 185 (quotations and citations omitted).

Under this exemption, the Government partially redacted two documents to remove "information [that] would reveal the identity of a person who provided information to the Service on the proviso and understanding that his or her identity . . . would not be revealed." (Keys Decl. ¶ 27.) [13] In addition, the Leboff Declaration states that the withheld information "pertains to the identity of an individual who gave information to the IRS after receiving an oral promise from me that his or her identity . . . would not be re-

---

13. Specifically, the Government withheld parts of Documents Bates Stamped 22–23.

(Keys Decl. ¶ 27.)

vealed." (Supp'l Leboff Decl. ¶ 2.) Though Plaintiffs argue otherwise, the statements of the auditor who provided the assurance of confidentiality are clearly sufficient to discharge the Government's burden of showing probative evidence of an express grant of confidentiality.

Thus, I conclude that the redaction of documents pursuant to Exemption 7(D) was also appropriate.

### III. *CONCLUSION*

For the reasons stated above, the Government's motion [dkt. no. 17] is GRANTED in part and DENIED in part, and Plaintiffs' motion [dkt. no. 12] is DENIED.

In particular, summary judgment is GRANTED for the Government as to Documents Bates Stamped 3 (entry 37), 22–23 (only those portions withheld pursuant to Exemption 7(C)), 54 (only those portions withheld under Exemption 7(C)), 58–59, 62–64, 67, 85, 100–03 (only those portions withheld pursuant to work product privilege), 105–20 (only those portions withheld pursuant to work product privilege), 127–32 (only those portions withheld pursuant to work product privilege), 136–38 (only those portions withheld pursuant to work product privilege), 140–47 (only those portions withheld pursuant to work product privilege), 148–62 (only those portions that were withheld pursuant to Exemption 3), and 252–1356. Summary judgment for Plaintiffs as to these documents is consequently DENIED. Fact issues remain as to whether the privilege-based FOIA exemptions were properly invoked to withhold or redact Documents Bates Stamped 1 (entries 11, 19, 20, 23), 2 (entries 24–25, 27–29, 33–35), 3 (entries 38–40, 44, 50–51), 4 (entries 64–65), 5 (entries 74, 85), 6–8, 12–15, 19–32 (except those portions of Documents Bates Stamped 22 and 23 withheld pursuant to Exemption 7(D)), 34–57 (except those portions of Document Bates

Stamped 54 that were withheld pursuant to Exemption 7(C)), 68–84, 87, 90–99, 104, 122–26, 133–35, 148–62 (except those portions withheld pursuant to Exemption 3), and 169. Summary judgment for both parties is therefore DENIED with respect to those documents.

The parties shall confer and inform the Court by letter no later than April 30, 2003, how they wish to proceed, for example, does the Government wish to submit supplementary declarations, or is *in camera* review appropriate, etc.

SO ORDERED.